## THE YOXFORD.[1]

### QUINN *v.* THE YOXFORD.

#### (*District Court, E. D. New York.* December 31, 1887.)

NEGLIGENCE—PERSONAL INJURY—UNSAFE CONDITION OF VESSEL—HATCH-COVER.
On evidence that the hatch-cover of the steamer Y. gave way when libelant stepped on it, by reason of its own defect, and so precipitated libelant into the hold of the vessel, without fault on his part, *held*, that the vessel was liable.

In Admiralty. Libel for damages.
Libel by Joseph Quinn against the steamer Yoxford, to recover damages for injuries sustained by reason of the giving way of a defective hatch-cover, precipitating libelant into the hold of the vessel.

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

· *John J. Allen*, for libelant.
· *E. B. Convers*, for claimant.

BENEDICT, J. This is an action brought to recover for personal injuries caused by the libelant's fall into the hold of the steamer Yoxford. At the time of the accident the steamer was taking in grain from an elevator. It being necessary to shift the elevator spout into hatch No. 2, the libelant was directed to assist in the operation. At the time, several hatch-covers were on hatch No. 2, which it was necessary to remove. These covers the libelant and another man, Powell, undertook to remove. While so engaged, the libelant fell into the hold, one of the hatch-covers falling with him. The libelant's account of the accident is that he stepped upon the covered portion of the hatch, and, in obedience to a direction from the man with him to come to him, he turned about, when the cover on which he stepped gave way under him, and he was precipitated into the hold below. He charges the accident to an unsafe condition of the hatch. A very different account is given by the master of the steamship. The master swears that he, at the time the libelant fell, was close to the hatch and saw the fall; that the libelant undertook to raise one of the hatch-covers without assistance, and for this purpose stood upon one of the fore-and-afters,—a narrow beam of wood on which, when in place, the hatch-covers rest at one end,—and, while standing on this narrow and dangerous place, stooped down, lifted one of the covers by a ring, and pulled one end of it from the coaming; that the cover was too heavy for him, and by its weight he was pulled off the fore-and-after on which he stood, and so fell from the beam to the hold below. According to the master, the sole cause of the accident was the excessive carelessness of the man in lifting the cover by its ring while he was standing on the narrow fore-and-aft beam over the open hatch.

If the master's account be true, the libelant cannot recover. If, on the other hand, the master's account be untrue, the fact of an untrue account, willfully made—as this one must be, if untrue—by the master of the ship, goes far to confirm the evidence presented by the libelant to show that the hatch was unsafe by reason of a worn and warped condition of the hatch-cover, and a loose condition of the fore-and-after. The important question of veracity thus raised has received my careful attention, and my conclusion is adverse to the claimant.

In the first place, I am unable to see how, if the libelant was standing as the master says he was, it was possible for him to lift the hatch as the master says he did. It is certainly highly improbable that any one would assume such a risk without necessity. In the next place, the libelant, whose appearance on the stand was in his favor, contradicts the master, and the libelant's testimony is confirmed by a disinterested bystander, who was at work with him at the hatch. Furthermore, while the account given by the master respecting the fall itself is specific, in other respects his account is so meagre as to raise a doubt as to its accuracy. Still further, Mr. Berry, the superintendent of the elevator, called in behalf of the steamer, fails to corroborate the master, but on the con-

trary contradicts him. Mr. Berry was forward on the ship when the man fell. The confusion at hatch No. 2 caused him to go there immediately. He says that when he arrived at the hatch the master was not there; that in five or eight, perhaps ten, minutes, the master came to the hatch, and then directed his men to get ready and get the man out. This is hardly consistent with the master's statement that he was close to the hatch when the man fell. If the master saw the man fall, it is highly improbable that he would have left the hatch before Mr. Berry came, unless, perhaps, to go into the hold. The master did not go into the hold, and he makes no mention of anything he said or did at the time; but, contrary to Mr. Berry, says that the libelant was got out by the elevator men, "under the instructions of Mr. Berry, who came on deck and directed matters." Furthermore, the master says he saw the libelant and the other man come on board the ship together, for the purpose of erecting the spout, when the proof is that the libelant came on board alone, on the call of Mr. Berry. Open to such criticism, I do not see how I can take the master's account to be the true account of the accident, as against the statements of two witnesses, one of whom has no interest in the result.

In coming to the conclusion that the master's account must be rejected, I have not overlooked the fact that, before any witnesses were examined, the master, in his deposition, relates a conversation between the libelant and Powell, just before the fall, which on their examination they say did take place. From this circumstance, it has been argued that the master must have been present when the man fell. It may show that, and it may show no more than that the master heard the accident described after it had happened. The latter is more probable than that the accident occurred in the way described by the master. My conclusion, therefore, is that the hatch-cover gave way when the libelant stepped on it, by reason of its own defect, and so precipitated the libelant into the hatch, without fault on his part. From that fact, the conclusion that the hatch was unsafe follows. Whether this unsafe condition resulted from a warp in the cover, or wear of the cover, or looseness of the fore-and-after, or all of these combined, is immaterial. It is plain that from one or all of these causes the cover was unsafe, and an improper covering for a hatch of this description. To provide such a covering for such a hatch was negligence which renders the ship liable for the injuries received by the libelant in consequence thereof. The decree must, therefore, be in favor of the libelant, with an order of reference to ascertain the amount of damages.