## McFARLAND *v.* THE J. C. TUTHILL.

*(District Court, D. Connecticut.  February 14, 1889.)*

SHIPPING—LIABILITY OF OWNER—INJURIES TO SEAMEN— DEFECTIVE PREMISES.
     The libelant, a seaman, while engaged in some work on the deck of a vessel belonging to claimant, stepped upon an iron grating over a coal-hole, which turned and let him down into the hole, injuring him.   There was an iron frame around the coal-hole, elevated about three inches above the deck; and upon the shoulder of this frame the grating in question rested.   The testimony of the libelant, which was supported by several witnesses, was to the effect that the shoulder of the frame was so worn away that when a weight came upon one side it turned for lack of support.   A few days before the accident another seaman had stepped upon the same grating and been thrown to the deck; and after the accident the captain placed a new cover over the hole, resting upon the deck.   One whose business it was to keep claimant's vessels in repair, testified that he did not think the coal-hole frame and grating defective; but the claimant did not attempt to get the testimony of officers or men, nor was the coal-hole frame produced, though in the possession of claimant's counsel.   *Held,* that the claimant was liable for the injuries suffered by libelant.

In Admiralty.   Libel for damages.
*Samuel Park,* for libelant.
*Augustus Brandegee,* for claimant.

SHIPMAN, J. .  This is a libel *in rem* by a seaman to recover damages for an injury alleged to have been caused by the defective equipment of the vessel at the inception of the voyage, which ought to have been known by the owners.   On June 30, 1888, at Greenport, Long Island, the libelant shipped on board the steamer J. C. Tuthill, a menhaden fishing vessel, as oarsman, at $35 per month.   The owner of said vessel is a corporation, doing business at said Greenport, where it fits out its vessels, which fish upon the waters of the Atlantic seaboard during the fishing season of about four months in the summer.   On July 4, 1888, the vessel was in port.   On the next day she was engaged in fishing near Falkner's island, in Long Island sound.   The morning was clear, and the water was smooth until about noon, when the wind began to blow hard from the south.   About 1 o'clock the seine-boats returned to the vessel on account of the weather, and were hauled up, and triced to the davits.   The libelant was tricing up one of the boats, and, while looking forward, stepped back upon the iron grating over the middle one of the three coal-holes on the starboard side of the deck.   The grating turned, and let him violently down into the hole, and he struck heavily in the *perinœum,* against the rim or bushing of the iron frame-work which surrounded the hole.   The violence of the blow caused a stricture across the urethra, which is, in his case, a permanent, serious, and very painful injury.   He was in great suffering after the accident, was carried to New London, where he was attended by surgeons, and, after about 11 days, was removed to his home in Maine, where he has been ever since. The surgeons' bills, his board in New London, and his wages were paid by the claimant.   He did not know, and had no reason to know, of the

defect in the frame. He is disabled from doing anything but light work, cannot walk without pain, passes water in drops, and will be laid up a good deal of the time. The stricture being deep-seated, the consequences are more painful and more serious than if it could be reached more easily by surgical aid or appliances. There are three coal-holes on the starboard side of the steamer. Each hole is surrounded by a cast-iron frame. An iron grating, which rests upon a shoulder or bushing in the frame, covers the hole. This grating admits light and air into the hold. The Tuthill's frames were elevated about three inches above the deck. In wet weather, a tight, heavy cover is put over the grating, which rests upon the deck, and prevents water from entering the hold. In fair weather, when vessels are fishing in the sound, this cover is not used. On June 30th another seaman on board the Tuthill stepped upon the same covering over the same hole. The grating turned, and threw him upon the deck, but without injury. After July 5th the captain placed over the hole a new cover, which rested upon the deck.

The important question of fact in the case is whether the grating turned by reason of a defect in the shoulder or bushing upon which it rested. The libelant's testimony is to the effect that this shoulder was worn away upon the forward and after ends, and upon the side, so that when a weight came upon one side of the grating it had no adequate support, and immediately turned. Four seamen on board the Tuthill at the time of the accident, and who are witnesses for the libelant, support this position from personal inspection of the frame immediately after the accident. The claimant's testimony on the subject is given by the person whose duty it was to put the claimant's vessels in order, each spring, for the fishing season, and who never saw that the Tuthill's plates were out of order, and who, after the accident, examined the plate, where the libelant fell, and did not think that it was defective. The superintendent of the claimant for the last 10 years also testified that he never had occasion to change the plates, and never noticed that they were out of order. The captain and mate of the vessel are in Maine. No effort was made by the claimant to get the testimony of either of them, or of any of the sailors. The coal-hole frame was sent to the office of the claimant's counsel in New London. It was not produced in court. Its non-production was not owing to forgetfulness, and signifies that its presence in court was not desired by the claimant. In view of the almost entire lack of testimony on the part of the claimant, for the testimony of its officer is, in part at least, offset by the act of the captain in providing a new cover which rested upon the deck, there is no alternative from the conclusion that the shoulder of the frame had become so worn that it was no longer a support for the grating; that the grating had become a trap for the foot of any one who stepped upon it; that this defect did not originate during the voyage, but existed when the vessel was put in order for the season, and on June 30th, when she last left Greenport, and ought to have been known by the owner. It has repeatedly been held of late that the owners are responsible, by the modern maritime law, to seamen for injuries on shipboard arising from the unsafe and dangerous

equipment for the ordinary contingencies of the voyage, which was furnished by the owners at the beginning of the voyage, the defects of which they knew or ought to have known, and of which the injured seamen did not know, and had no adequate reason to know. *Halverson* v. *Nisen*, 3 Sawy. 562; *The Edith Godden*, 23 Fed. Rep. 43; *The Neptuno*, 30 Fed. Rep. 925; *The Yoxford*, 33 Fed. Rep. 521; *Couch* v. *Steel*, 3 El. & Bl. 402. The claimant says that, if the gratings were defective, the owner had provided close-fitting covers for use at sea, and that, if the captain did not use them, it was his negligence, for which the owner is not responsible. If this legal proposition was a sound one, it is not a proved fact that the close-fitting covers were for use except in stormy weather, and I do not think that the weather of July 5th required their use. The libelant is a permanently disabled and suffering man. Let a decree be entered in his favor for the sum of $2,500 and costs.