## THE EDWIN.

### CRAWLEY v. THE EDWIN.

(District Court, E. D. New York. April 28, 1898.)

1. NEGLIGENCE—EVIDENCE—WEIGHT AND SUFFICIENCY.

A longshoreman, who was injured by the slipping of a boom from its crotch, introduced three witnesses, who testified that the cleats and leg of the crotch were badly worn. Three other witnesses, on behalf of claimant, testified that the leg and cleats were in good condition. *Held* that, the burden being on libelant to prove the worn condition, his proof failed.

2. EVIDENCE—ADMISSIBILITY.

On an issue as to the condition of a crotch supporting a boom, testimony of a ship surveyor, who examined it several days after an accident alleged to have been caused by its defective condition, is inadmissible, it not being proven that the crotch had remained unchanged.

3. MASTER AND SERVANT—APPLIANCES ON SHIPBOARD.

Where the wooden crotch for supporting a boom is such as are usually in use on old ships, and it is not shown to be unsuitable, it is not the duty of the shipowners to furnish a later appliance, although it is a superior one.

This was a libel by John Crawley against the steamship Edwin to recover damages for personal injuries.

Alex. McKinney and Robert H. Roy, for libelant.
Convers & Kirlin, for claimant.

THOMAS, District Judge. The libelant is a longshoreman. On the 29th day of December, 1898, he was employed by a firm of stevedores to assist in loading with grain the claimant's steamship, the Edwin. The ship was lying at a dock at the foot of Pacific street, Brooklyn, with her bow in, and her starboard side abreast, the wharf. The grain was brought into the aft hatch from an elevator on the port side of the ship, by means of a pipe 70 feet in length. The free end of the pipe was supported by a line running from it to a gaff of the ship. Slipped over the end of the pipe, and held to the same by a rope, was a sleeve or nozzle, about 16 feet long and some 8 inches wide. This sleeve ran into the hatch of the ship sufficiently to carry the grain into the port or starboard side thereof, accordingly as the free end of the sleeve was raised or lowered. To raise or lower the

end of the sleeve for this purpose was the duty of the libelant. To enable him to do this, a rope was fastened to the sleeve, somewhere along the portion thereof extending from about the coaming of the hatch, on which the sleeve rested, to the end of the sleeve. The claimant claims that, to obtain a purchase on the sleeve, the libelant had carried the rope over the boom, which was some 6 feet to the starboard of the sleeve, and which extended from the mast across the hatch to a point aft thereof, where it rested on a crotch. The boom was 46½ feet long, measured 12 inches in diameter, weighed about 1,800 pounds, and could only be moved from its position by some great force suitably applied for that purpose. The boom was not supported otherwise than by the mast at one end and the crotch at the other. The crotch consisted of two pieces of wood, 6 inches in width and 3 inches in thickness, set into each other at the point of intersection, and holding the end of the boom some 7 feet above the deck. The spread of the crotch was 4 feet and 8 inches, and the opening wherein the boom rested was 11 inches wide by 6 inches deep. On the deck were bolted pieces of wood, each 9 by 7 inches in length and breadth, with a recess 3 by 6½ inches by 1 inch deep, into which the leg fitted. Crotches of this sort for holding booms are of the older kind. Somewhere from 10 to 20 years ago, iron supports, firmly fastened to the deck, came into use, and are now generally employed on the newer ships. The wooden crotches, however, continue in use on the older ships, and it is not apparent that they are not sufficiently suitable. In such case it was not the duty of the shipowner to provide the later appliance for the protection of the libelant, although it might in some respect be superior.

While the libelant was attending to the sleeve, and leaning over and looking down into the hatch for that purpose, the boom fell over to port and struck him, doing the injury which is the subject of this action. A witness for the libelant states that he saw the crotch sliding a little to port, until it finally tilted on its port leg, and went bodily over, allowing the boom to fall. This witness, and two others, all stevedores, state that the leg and the cleat into which it was fitted were considerably worn, and it is the claim of the libelant that this worn condition enabled the leg of the crotch to slip over the cleat, aided thereto by the slippery and icy condition of the deck which then existed.

On the part of the ship three witnesses, all connected with the ship, state that the legs and cleats were in good condition and were not worn. A ship surveyor, two or three days after the accident, examined the crotch and cleats and found them in good condition. Upon the trial a question arose as to accepting the evidence of this subsequent examination, as it did not appear that the appliances had remained unchanged. Although the witness seemed to identify the crotch and cleats, by showing that they did not appear to have been disturbed or removed, yet, for the purposes of this discussion, his evidence should be disregarded.

The case on this issue will then stand in this way: Three men, fellow workmen of the libelant, examined in court, testified to the worn condition of the crotch and cleats. Three persons connected

with the ship, examined on depositions, testified to the good condition of the crotch and cleats. The three men examined by the libelant impressed the court with their general good faith. The witnesses not presented in court cannot be presumed to have been otherwise than presentable and well-appearing. The burden of proving the defective condition is on the libelant; hence he must produce a preponderance of evidence. Can the court justly say that the evidence of the libelant's witnesses outweighs that of the claimant's witnesses? The men on the ship had the best opportunity to judge, and there seems to be no reason for holding that they are less worthy witnesses than those produced by the libelant.

It is urged that the theory of the worn legs and cleats should be adopted, as this alleged condition furnishes a sufficient cause, and no other sufficient cause appears. A cause may be sufficient, yet it has no claim to acceptance unless the quality or weight of the evidence brought to establish it be also sufficient. Otherwise there would be the following illogical deduction: (a) Worn legs and cleats are a sufficient cause of the boom's slipping. (b) No other sufficient cause appears. (c) Worn legs and cleats are not proven by a preponderance of evidence. (d) The sufficiency of the worn legs and cleats as a cause, and the insufficiency of the proof of other causes, justifies the adoption of the theory that worn legs and cleats were the cause, although no sufficient independent proof thereof be given. In other words, the doctrine of exclusion is employed to help out evidence defective in weight. But the fact that theories furnished by the claimant do not explain the accident does not leave it to be inferred that the real cause is that suggested by the libelant. The libelant must stand on the strength of his own theory, and not on the weakness of that of his adversary. The claimant is not required to present either a theory or an explanation. He may content himself with adducing evidence sufficient in weight to counterbalance that produced by the libelant in support of his particular theory.

The event has been thoroughly investigated, and the cause of the accident has not been proved within the rule that places the burden of proof upon the libelant. Therefore the legal presumption that the claimant was not negligent must continue. There is no question of the libelant's injury. Although the libelant's case has been presented thoroughly and with skill, it fails because of the onus resting upon him of showing, with the precision required by law, what agencies produced the accident. The circumstances seem to preclude an ascertainment of the just cause of the accident.

The libel must be dismissed, with costs.