THE INDRANI.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 330.

SHIPPING—INJURY TO STEVEDORE—LIABILITY OF VESSEL.

Libelant was a stevedore in the employ of a contractor engaged in loading a portion of a ship, while a separate contractor was loading a different portion. The ship had furnished libelant and those with whom he worked a safe place in which to work and a safe passage thereto, which libelant had used; but, coming out of the hold where he was at work during the night, he started to go along the deck upon the other side of the ship, which was not intended to be used as a passage and had been obstructed, and by reason of the darkness fell through an open hatchway, which had been left unguarded by employés of the other contractor, and was injured. The hatchway was in the usual place, and libelant had been employed on ships for many years. *Held*, that the ship was guilty of no negligence which rendered it liable for the injury, the proximate cause of which was libelant's own negligence.

Appeal from the District Court of the United States for the Eastern District of Virginia.

This case comes up on an appeal from a decree of the district court of the United States for the Eastern district of Virginia, in admiralty. The steamship Indrani, on January 18, 1898, was lying at a wharf at Newport News. She was taking in cargo. To this end she had employed two boss stevedores, each having his own gang, and each doing separate work. One gang was engaged to load the ship with a general cargo. They were at work in hold No. 2. The other gang was engaged in loading her with grain by means of an elevator on the wharf. To this end they put a chute down through hatch No. 3. The ship, having been engaged in the cattle trade, had erected upon her upper or main deck a permanent set of cattle fittings or pens, the roof of which extended forward from, and about on a level with, the lower bridge or floor of the chart room, and was about seven feet above the main deck. This roof is referred to in the record as the "hurricane deck." In this hurricane deck hatches were cut directly over and corresponding with the hatches on the main deck, but, being required by the underwriters to be left open for the purpose of ventilation for the cattle, these hatches had no covers, even at sea. They were guarded, while in port, by a wire manrope about three feet above the deck, rove through stanchions let into holes cut in the deck at each corner of the hatch. The method of reaching the forward hurricane deck from the wharf was by means of a ladder reaching from the wharf to the lower bridge, opposite the chart room; thence by an alley around the rear of the chart room; and then forward, along its port side, out onto the deck. At about 3 o'clock on that afternoon, the vessel being ready to receive cargo, the libelant, Essex Holts, as header of a gang of stevedores, was sent into the lower (No. 2) hold, and commenced to load flour. He continued at work in this hold until 6, when the gang knocked off and went ashore for supper, returning at about 7 o'clock to their work. On each of these occasions libelant passed by hatch No. 3. Shortly after 7 o'clock a gang of men in the employ of the grain stevedore came aboard, went to the No. 3 hatch, and, taking down the manrope on the starboard side, inserted the grain chute in the hatch ready to load the grain. The chute passed down through hatch No. 3 into the main hatch. For this purpose two out of the seven subdivisions of the cover of the hatch

were removed. After putting the chute down, these men went away, leaving the manrope on the starboard side of the hatch down, with a chute in the hatch. The libelant, at work in No. 2 hold, between 9 and 10 o'clock p. m., needing dunnage, sent out a man in search of one Enright to get it. This man came back, saying that it was too dark, and he was afraid to go. He then went himself; but he did not go by way of the passage on the port side of the ship, where the way was clear. He went straight aft from No. 2 hatch, and fell into No. 3 hatch down to the bottom of the vessel, injuring himself seriously. He did not see the chute which was in this hatchway until he had reached the bottom and looked up at it. The libelant is the only witness as to the accident, and how and when it occurred. He does not himself give an understandable account of where it was in the hurricane deck hatch that he stepped in. His testimony leaves the place where he stepped in uncertain, and there is a difficulty in comprehending how, if he fell through the forward part of the hurricane deck hatch, as he testifies he did, he could possibly have gone through the main deck hatch, which was partly covered, and through the under deck and the orlop deck hatches, and have been found where he lay, in the bottom of the ship. There is conflict in the testimony upon the question of lights on the deck. There were electric lights on the wharf, and there were lights about the ship and in the chart room near No. 3 hatch. The libelant had been a member of a stevedore's gang for 27 or 28 years. The ship was lying with her starboard to the wharf.

The court below heard the witnesses and found as follows: (1) That the respondent ship was guilty of negligence in allowing its hatch No. 3, in which libelant fell and sustained the injury sued for, to be and remain open at night, without proper guard or protector on one side thereof, and also in not having the same, while in this condition, properly and sufficiently lighted, and that the injuries sustained by the libelant were the result of these conditions. (2) That although, as between the steamship and the stevedore contracting to load the ship at said hatch, the latter may be primarily liable, still the libelant is none the less entitled to recover in this case against the respondent steamship. (3) That, notwithstanding the negligence of respondent as above stated, the libelant was not himself free from fault, in that he did not exercise as high a degree of care as he might have done in moving about a ship in the dark, with which he was not acquainted, and for this reason he should only recover for one-half of the damages sustained by him. (4) That the sum of $1,500 is a proper award to the libelant, that being such an amount as the court thinks, under all the circumstances, taking into consideration his own negligence as aforesaid, he is equitably, justly, and fairly entitled to receive; and a decree may be entered for this amount, with costs.

An appeal was allowed, and the cause is here on assignments of error directed to all the findings of the court.

Robert M. Hughes, for appellant.

W. B. Burroughs and W. H. Arrington, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and MORRIS, District Judge.

SIMONTON, Circuit Judge (after stating the facts). What was the proximate cause of this accident,—the negligence of the respondent or of the libelant? His honor, the district judge, found that there was negligence on the part of the libelant, and so he reduced the award of damages. As there has been no exception to this finding, it can be safely assumed that this fact has been established. The Maria Martin, 12 Wall. 40, 20 L. Ed. 251. Was the respondent also guilty of negligence? Was there the absence of that care which it was the duty of respondent to use? The action proceeds on the idea that there existed an obligation on the part of the respondent to use

care, and that there was a breach of that obligation to the injury of libelant. The libelant was not on the ship by the mere sufferance or license of the master, but for the purpose of performing a service that could not have been performed elsewhere, and in which the shipowner had an interest. The libelant had, therefore, a right to be where he was, and it follows that there was a duty on the part of the shipowner to secure him a safe place in which he could work, and a safe passage to and from that place. Gerrity v. The Kate Cann (D. C.) 2 Fed. 246. This was the nature and extent of this duty. No accident happened to libelant in the place in which he was at work, the No. 2 hold. The accident occurred after he had left the hold. The shipmaster had provided a safe mode of ingress and of egress to and from the hold by a gangway from the wharf to the lower bridge, opposite the chart room; thence by an alley around the rear of the chart room; and thence forward, along the port side of the ship, out to the deck. There were lights on this passage. On the starboard side of the ship the way forward towards hold No. 2 was obstructed. Although the libelant had used the passage so provided in going into the ship, he did not avail himself of it on the night of the accident. He had just been informed that it was dark on deck, yet he went out of hatch No. 2, and apparently went straight aft from it towards and on the starboard side of hatch No. 3, and fell into it. The finding of the court below that this was negligence on his part makes it clear that he had gone where he had no right to go, and so was injured. This was the proximate cause of his injury. It was the natural and probable consequence of his negligence. Railroad Co. v. Kellogg, 94 U. S. 475, 24 L. Ed. 256. The district judge, however, held that the respondent was also negligent in allowing the hatch to remain open at night without proper guard or protector on one side, and in not having a light there. The ship was being loaded by two separate contractors, each in charge of his part of the ship. To accomplish his work the stevedore loading grain occupied hatch No. 3, removed the wire manrope on its starboard side for the purpose of putting in the chute, without which the grain could not be carried into the ship, arranged the chute in the hatch, and left it so. If there were any negligence attending that operation, it was the negligence of this contractor.

In the case of Dwyer v. Steamship Co. (C. C.) 4 Fed. 495, 17 Blatchf. 472, the court quotes Packard v. Smith, 10 C. B. (N. S.) 470, and applies the principle to the case of a stevedore injured by the act of another stevedore:

"If an independent contractor is employed to do a lawful act, and in the course of the work does some casual act of negligence, the common employer is not answerable."

In The Wm. F. Babcock (D. C.) 31 Fed. 419, an employé of a master stevedore, who was loading a vessel under contract, was injured by slipping into a small trimming hatch between decks while engaged in storing cargo. The light in the between decks was dim, and libelant did not know of the existence of the hatch or that it was uncovered. When the vessel was turned over to the master stevedore to be loaded,

this trimming hatch was covered. The cover was removed by the stevedore's foreman. Held, that the vessel was not liable. The court in that case says:

"Whether or not any of the crew or officers were engaged in the performance of any duties on board the ship, the taking in and stowing of the cargo was conducted under a contract made by the vessel with a master stevedore. * * * If the negligence was not that of the master, but of an independent contractor, or of the stevedore having charge of the loading of the ship, the latter, and not the owners, are liable."

The finding of the court below ignores this. It proceeds upon the idea that, notwithstanding the contracts with these two stevedores, the master had a general supervision of the ship, and that it was his duty to keep his hatches closed and guarded or lighted. It must be borne in mind that the hatchway in question was one of the usual hatches in the ship; that it is customary, when ships are in port, to keep the hatches open for the purposes of ventilation; that in this cattle ship this hatch was intended to be always open; that this vessel was being loaded, which necessitated an open hatch; that libelant had had an experience of over 25 years as stevedore, and therefore knew all this; that the master had done all in his power to prevent the use of the starboard side of the ship as a passage, by obstructing it; and that he had provided a safe passage on the port side.

There are very many cases in the federal reports bearing on cases of this character. In Dwyer v. Steamship Co., supra, Judge Benedict says:

"I cannot agree with the proposition that it was a part of the defendant's duty to maintain a safe covering upon this hatchway. Hatchways are well-known features and sources of danger on a ship. They are intended to be open a large portion of the time, especially when in port, not only for the purposes of loading and unloading, but also for ventilation."

Judge Brown of New York, in Anderson v. Scully (D. C.) 31 Fed. 162, does not think it the duty of the master—

"To keep all parts of the boat secure against any possible accident to strangers who may hurry across it at any time and in any direction without notice or inquiry, a safe passage in another direction having been secured."

In the circuit court of appeals for the First circuit, in Horne's Adm'x v. George H. Hammond Co., 33 U. S. App. 362, 18 C. C. A. 54, 71 Fed. 314, the action having been brought by the administratrix of a stevedore against the shipowner for injury by falling down an open hatch, the court quotes Dwyer's Case, supra, with approval and adds:

"The necessities and usages of commerce, and the uniform testimony by the admiralty courts to the existence of this rule, alike when it is in issue and when it is not, so support it, not only with reference to the main deck, but also with reference to between decks, that it cannot be gainsaid."

In the circuit court of appeals of the Fifth circuit, in The Gladiolus, 22 Fed. 455, the court, affirming the decree of the district court (21 Fed. 417), held that there was no duty on the part of the master and crew of a steamship, which was being loaded under contract by a stevedore, to look to the hatches and the preparations to receive car-

go; nor was there neglect of duty in leaving the hatchways uncovered, through which the stevedore, husband of libelant, fell and met his injury; that there was negligence on the part of this stevedore in going to the hatchway without a light, if light was needed; that, if there was negligence in the case, it was negligence of the stevedore and his gang, for which the ship was not responsible.

In the circuit court of appeals of the Second circuit, in The Saratoga, 36 C. C. A. 208, 94 Fed. 221, the court had before them a case of injury to a stevedore falling through an open hatch. Among other things the court says:

"The district judge held that the hatch coverings were customarily left open when the vessel was in port. With the knowledge of this condition of things libelant must be charged. Passengers, visitors, or workmen from shore, unaccustomed to the regulation of the ship's internal economy, who are invited by the owner, either expressly or by implication, to wander about the vicinity of such hatches, may hold the owner responsible for the results; but, so far as the regular gang of workmen from the shore, who are familiar with the location and regulation of the hatches, are concerned, their knowledge of the situation and their continuance of the work are held to be conclusive evidence that, as to the particular danger of which they are advised, they took the risk. This has been held so many times that it is unnecessary to cite authorities."

There is nothing in the testimony of this case which takes it out of the rule established by these authorities. We are of the opinion that, inasmuch as the ship had provided libelant with a safe place in which to do his work, had also provided a safe mode of ingress and of egress from and into this place, which was known to him and had been used by him, and inasmuch as he had met with his accident by not using this mode of egress, together with the fact that hatch No. 3, into which he fell, was in charge of, and the manrope on the starboard side had been let down by, an independent contractor, the ship is not responsible to the libelant for his injury.

The decree appealed from is reversed. The case is remanded to the district court, with instructions to dismiss the libel.