## THE SARANAC.

### (District Court, W. D. New York. October 12, 1904.)

### No. 27.

**1. SHIPPING—INJURY TO STEVEDORE—LIABILITY OF VESSEL.**

When cargo is loaded or unloaded under the direction of an independent contractor or master stevedore, and pursuant to contract, the duty of the ship ends when it furnishes to the stevedores a safe place in which to work, and a safe passage thereto; and, when it has performed such duty, it cannot be held liable for an injury to an employé of the contractor. But it is liable where it is shown that the employé, when injured, was in the proper discharge of his duties, and that the proximate cause of the injury was a structural defect or weakness of material in some part of the vessel.

**2. Same—Defective Hatch Cover.**

Evidence considered in an action against a steamer by a foreman who was injured by falling down a hatchway while in charge of stevedores employed by a contractor in unloading the vessel, and *held* insufficient to render the vessel liable for the injury on the ground that it was due to the defective construction of the section of the hatch cover on which libelant stepped, and which fell with him.

**3. Admiralty—Pleading—Amendment of Libel.**

Where a libel alleges generally, as the ground of a vessel's liability for the injury of a stevedore, that a hatch cover was improperly constructed, libelant may properly be given leave to amend during the trial by setting out the particulars in which the construction is claimed to have been defective.

**4. Evidence—Admissions—Res Gestæ.**

In an action against a vessel to recover for an injury to a stevedore by falling down a hatchway, a statement made by the mate, 10 minutes after the accident, that the "hatch covers never did fit," is not admissible as a part of the res gestæ.

**5. Witnesses—Cross-Examination.**

Where a witness is asked on cross-examination if he did not make a certain statement, not relevant to any matter brought out on his direct examination, and denies it, his denial is binding on the party asking the question.

**6. Depositions—Admissibility in Evidence—Irregularities in Return.**

A deposition which was neither delivered into court in person, nor sealed and addressed to the clerk as required by statute, is not admissible as evidence.

In Admiralty. Action for personal injury to stevedore.

Daniel Cruice and Harvey L. Brown, for libelant.

Bissell, Carey & Cooke and James McC. Mitchell, for respondent.

HAZEL, District Judge. The libelant, a longshoreman, sustained personal injuries on account of a fall through a hatchway of the steamer Saranac, owned by respondent, while at the port of Chicago, Ill. At the time of the accident he was in charge of and directing the manner of unloading the cargo of the steamer from the deck to the wharf or dock of the Chicago, Burlington & Quincy Railroad by a gang of stevedores who were employed by an independent contractor. While thus engaged in the discharge of his duties, at about 8 o'clock on the morning of August 23, 1899, libelant stepped upon port hatch cover of No. 1 hatch on the deck of the vessel, which instantly tipped or tilted under his weight, precipitating him into the hold to the bottom of the vessel. He sustained severe and painful injuries. This proceeding to recover damages was instituted in October, 1900, and the amount of $20,000 compensatory damages is demanded. The cause came on for hearing in March, 1903, but has not earlier been considered for the reason that counsel for both sides, desiring time for the submission of briefs, by mutual arrangement extended the time for so doing, and reply briefs have but recently been submitted.

On the morning of the accident, the libelant came from aft forward straight to No. 1 hatchway, where a gang of stevedores were then engaged in removing sacks of cement to the wharf. The coam-

¶ 5. See Witnesses, vol. 50, Cent. Dig. §§ 1224, 1237.

ings which surrounded the hatchway, and upon which the covers closing the same rested, were about 1⅜ inches wide. The dimensions of No. 1 hatchway, from which the freight had previously been unloaded, was about 15 feet athwartships, and 8 feet fore and aft. There were six hatches on the steamer Saranac, extending athwartships, each having four covers, about 3 feet and 8 inches wide, constructed of narrow boards, 2½ inches thick and 3 inches wide, held close together by five 2x3 inch oak carlings bolted crosswise on their undersides. Their exact lengths are in dispute. Libelant claims the length of a sectional hatch cover did not exceed 8 feet and 3 inches, while the testimony of respondent places the length at from 8 feet 3½ inches to 8 feet 6 inches. The libelant stepped upon the port section of the cover for No. 1 hatch, which was apparently properly and securely in position, resting on the coamings. His weight tipped or tilted the cover, causing him to fall about 17 feet through the hatch to the bottom of the ship. There is no conclusively direct evidence showing the nature or extent of any defect in the hatch or its construction. The covers had been adjusted upon the hatchway early on the morning prior to the accident by the crew under the direction of the second mate. The principal theory of libelant is that there was a structural defect in the carlings on the port hatch cover, namely, that they were bolted too far from the ends, thereby allowing a play or shifting movement beyond the edge of the coaming. Respondent claims, first, that the Saranac did not owe to libelant any duty to cover the hatchway in question; that the hatch cover, coamings, and appliances were in good condition when the vessel was delivered to the stevedores for unloading, and hence its full duty to libelant was performed when it voluntarily covered the hatchway by adjusting the cover; and, second, that the evidence leaves the question both as to the manner in which the accident occurred, and as to whether the vessel was guilty of negligence, uncertain, and therefore libelant cannot recover. A brief discussion of these points follows:

There is no doubt that the owner of a vessel, who fails to secure to a stevedore employed to load or unload the vessel a safe place to work, and a reasonably safe passway to and from such place, is liable for the acts and negligence of the master and crew in that regard. Gerrity v. Bark Kate Cam (D. C.) 2 Fed. 245, and cases herein cited.

The libelant employed by the contractor, as already stated, was engaged upon the steamer Saranac, directing the manner of unloading the vessel by a gang of stevedores. It is not controverted that the discharge of libelant's duty required his presence at the precise place where the mishap occurred. The rule is that a vessel in charge of stevedores or independent contractors is not liable in admiralty to such stevedores or contractors, or to their employés, for injuries, unless a contractual relation exists between the vessel and persons injured, or on account of the failure either on the part of the owner, or those in charge of the navigation of the vessel, to perform a maritime duty or obligation, as a result of which injuries are received. The Thyra (D. C.) 114 Fed. 978. Ordinarily, when the cargo is loaded or unloaded under the directions of an independent contractor or master stevedore, and pursuant to contract, the duty of the ship ends when it furnishes to the stevedores a safe place in which to work, and a safe passage thereto. It has fre-

quently been held that the vessel was not liable for injuries sustained by a stevedore falling through a hatchway which had been left open and unguarded by the employés of the contractor. In such circumstances the cases apparently hold that the vessel complies with its full duty to the stevedores when it has furnished a reasonably safe place in which to work, and an unobstructed passage thereto, suitably lighted. The Indrani, 101 Fed. 596, 41 C. C. A. 511; Dwyer v. National Steamship Co. (C. C.) 4 Fed. 493. Where, however, it is shown that a defect of construction or weakness of material was the proximate cause of the injury, a different rule obtains. The vessel owed to libelant a duty to exercise ordinary care in inspecting the coamings, carlings, strongbacks, and hatch covers, and is chargeable with the responsibility of furnishing covers for hatches and appliances of the character described by the proofs, in a proper condition to bear the weight properly imposed upon them. The Red Jacket (D. C.) 110 Fed. 224; The Yoxford (D. C.) 33 Fed. 521; The Phœnix (D. C.) 34 Fed. 760; The Rheola (C. C.) 19 Fed. 926; McFarland v. The J. C. Tuthill (D. C.) 37 Fed. 714. The important question of fact presented is whether the end carlings bolted underneath the section of the hatch cover for that portion of the hatchway through which libelant fell were so improperly placed that the hatch cover was structurally defective. The libel sets forth the manner in which the injuries were received, and, in general terms, charges that the hatch cover was improperly constructed. Notwithstanding the objections by respondent's counsel, the court on the trial permitted amendments to the libel regarding the absence of strongbacks, and that the section hatch cover in question was allowed to remain out of repair and condition. The amendments were not inapplicable to the issues raised, and the respondent was sufficiently apprised by the broad allegations of the original libel to justify their allowance. No surprise was asserted by reason of the amendments. In the circumstances, it would have been unjust to deprive libelant of his right to prove a structural defect in the hatch cover merely because he failed to distinctly and specifically state his entire case in the libel. Dupont de Nemours & Co. v. Vance et al., 60 U. S. 162, 15 L. Ed. 584; The Gazelle and Cargo, 128 U. S. 474, 9 Sup. Ct. 139, 32 L. Ed. 496; Benedict, Admy. (3d Ed.) § 483; Davis v. Adams, 102 Fed. 520, 42 C. C. A. 493. The evidence of the libelant was chiefly directed towards affirmatively establishing the negligence of the respondent on account of its failure to place a strongback under the hatch cover. Much testimony was given to show such omission. Evidently the theory of proctor for libelant at the outset was that the absence of a strongback, which is a support for the hatch cover, lessened the strength of the cover, causing it to fall or tip when Patten's weight came upon it. The question as to whether a strongback was in place under the cover for the hatch is in sharp conflict. The witnesses for the libelee, who were interrogated regarding the appliances mentioned, were positive in their assertion that strongbacks were under each of the sections into which the hatch cover was divided. Notwithstanding the fact that the probabilities of the accident might have been averted by strengthening the hatch cover in the manner stated, the evidence tending to show that no strongbacks were in place is not thought to be of probative force. The vessel owed

no duty to libelant to keep the hatch covers and appliances in their proper place, nor is it perceived that the absence of a strongback underneath the cover for No. 1 hatch could have been the proximate cause of the accident. Dwyer v. National Steamship Co., supra; Anderson, Adm'x, v. Scully (D. C.) 31 Fed. 161. From a reading of these cases, it will be observed that if the proofs rested entirely upon the failure to place a strongback underneath the hatch cover, presuming it to have been in good condition, there certainly could be no recovery by libelant. If the hatch cover was properly adjusted on the coamings, the mere stepping upon it would not have caused it to tilt or fall sideways. The libelant must be deemed to have entirely failed to establish the negligence of the vessel, unless the hatch cover was structurally unsafe. Upon this point, libelant's affirmative showing is unsatisfactory and unconvincing. At the close of libelant's case, a motion was made to dismiss the proceeding on libelant's proof alone. This application was denied. Thereupon the respondent introduced evidence to explain the accident, and denying liability. Hence the case must be decided upon all the facts before the court. Foster's Fed. Pr. § 413.

The testimony of Bullerwell, second mate of the Saranac, witness for respondent, is to the effect that after the accident the cover for the hatch was taken from the hold where it had fallen, and, being out of shape, a strip of wood about an inch or inch and a half wide was nailed on the outer side of each carling to properly adjust the hatch cover to the coamings and to prevent it from sliding. According to libelant, this testimony is strongly persuasive of a structural defect in the cover for the hatch. The proposition is that such evidence, in connection with the measurements, establishes beyond doubt that the play between the end carlings and the coamings was greater than necessary to impart a proper adjustment. That a tumble of the hatch cover to the bottom of the hold, a distance of 17 feet, would knock it out of shape, is not surprising. In accounting for the strips nailed to the carlings after the accident, the witnesses offered by respondent gave evidence tending to show that, though the carlings were not broken in consequence of the tumble, they nevertheless were twisted, and were 3 or 4 inches out of alignment. Libelant insists that the relative distances between the end carlings and the edge of the cover remained the same, and the measurements in evidence show an excessive play which enabled the cover for the hatch to move or slide beyond the edge of the coaming. Upon this point the testimony has been carefully examined, and the differences noted in the measurements of the usual practical space or play to which the testimony is susceptible. The measurements show that the relative distance between the outside of the end carlings on the cover was 7 feet 9½ inches. The hatchway was 8 feet between the fore and aft coamings, while the cover for the hatch was 8 feet 3½ inches long. Thus it will be perceived that the cover, when adjusted (the end carling resting against the coaming on one side), will still be supported by the opposite coaming by a purchase of about one-half inch, and that tilting of the cover, irrespective of the manner of adjustment, is impracticable. Libelant contends that the 1-inch strips that were placed outside the end carlings, as already mentioned, shows that prior thereto and at the time of the accident the play was greater

than 2½ inches, and accordingly the cover could have been tilted by the act of libelant stepping upon it. However that may be, it may be fairly presumed from the evidence that the strips were merely of such width as would allow a proper adjustment. The dimensions and the manner of repairing the structure are not of sufficient weight to satisfy the court of the excessive play claimed, nor do they justify the conclusion that the asserted structural defect was the proximate cause of the accident. Moreover, giving due weight to the Rogers crowbar experimental test, the proofs, in their entirety, prevent adopting the inferences drawn by libelant from this testimony. Such inferences are not as reliable as the more positive testimony of respondent's witnesses that the hatch cover was in good condition when the Saranac left the port of Buffalo, and also on the morning just prior to the accident. The negligence of respondent is not presumed from the occurrence of the mishap. The libelant must affirmatively establish that he was injured by the negligent act of the respondent. He has not proven the negligence of the vessel with that degree of certainty required by law. Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; The Edwin (D. C.) 87 Fed. 540. Neither proposition upon which negligence is predicated, namely, absence of the strongback, and imperfect construction of the hatch cover, is established with requisite positiveness. In the absence of proof showing a structural defect in the hatch cover, many other reasons equally probable as that assigned, for which respondent would not be liable, might be enumerated to explain the cause of the fall. The testimony to sustain the burden of proof must be positive, and the inferences must be sufficient to supply the want of direct evidence.

The argument of proctor for libelant is principally based upon conjecture and certain inconsistencies found in the respondent's evidence. He points or turns the inferences drawn by him to a theory fixing the proximate cause of the injury. Such deductions, however, are thought to have little evidential support. In this connection, it is proper to again mention the experimental test made by the witness Rogers at Buffalo, on the return of the vessel, which hitherto has received comparatively little attention. The strips were taken off the carlings, the hatch cover being in the same condition as before the tumble; and, with the aid of a crowbar, it was unsuccessfully attempted to shift the cover off the hatch and tilt it. This would seem to negative libelant's theory that the alleged defect in the carlings was the proximate cause of the accident. Accounting for the accident, the respondent contends that three tiers of cement, consisting of about 150 bags, which were piled forward of and close to the hatch, tumbled down upon the port side of the hatch cover, displacing it; the libelant, who stood near the starboard side, ran diagonally across, stepping upon the cover, and was precipitated into the hold in the manner stated. In the view taken by the court of the affirmative showing, the plausibility of this supposition, regarding which little evidence is found in the record, need not be decided.

As to the reception of certain evidence upon which a ruling of the court was reserved, stress is placed upon a remark by the witness McDonald, mate of the Saranac, soon after the accident, and while Patten

was being assisted out of the hold by the witnesses Gibbs and Johnson. The latter testified that McDonald stated, in substance, that "these hatch covers never did fit, anyway." Assuming the statement to have been made, which is denied by McDonald, it is not entitled to any probative weight. Atchison, T. & S. F. R. Co. v. Parker, 55 Fed. 596, 5 C. C. A. 220; Marande v. Texas & P. Ry. Co., 124 Fed. 42, 59 C. C. A. 562; Vicksburg & M. R. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 172, 30 L. Ed. 299; Luby & I. v. Hudson River Railroad Co., 17 N. Y. 131; Packet Co. v. Clough, 87 U. S. 528, 22 L. Ed. 406. McDonald was not a bystander. The declaration was made about 10 minutes after the accident. In these circumstances, the statement was not a part of the res gestæ, and admissions of this character by an agent or employé cannot bind the respondents. Such declarations, designedly or thoughtlessly made, and which were not the natural utterances of the declarant at the time of the accident, are inadmissible. Furthermore, the witnesses between whom the conversation occurred did not represent the owner of the vessel, and hence the statements attributed to them are plainly hearsay, and were not made within the scope of their authority. Nor is the statement of the witness Bullerwell to McDonald, several weeks prior to the accident, that the hatches were unsafe, considered by me. On cross-examination the witness Bullerwell was asked, against respondent's objection, if he had not cautioned the first mate against stepping on the hatches, and if he had not informed him that they were insecure. The witness denied making the remark. Libelant then called the first mate, McDonald, in rebuttal, who testified that Bullerwell had so stated to him before the accident. It is thought that libelant was concluded by the denial, and therefore it was not proper to contradict it by testimony that he did make the remark attributed to him at the time stated. Carpenter v. Ward, 30 N. Y. 243; Smith v. Lehigh V. R. Co., 177 N. Y. 379, 69 N. E. 729.

The McFadden deposition, taken in April, 1901, in accordance with the tentative ruling announced at the trial, is now held to be improperly filed. Compliance with the statute, namely, that the officer taking the deposition neither personally delivered it into court, nor sealed up the same and directed it to the court, as prescribed by the statute, was not waived. The deposition had been mislaid by the officer taking it, and, being found, was brought into court during the trial. This certainly would seem to violate the safeguard which the statute throws around a deposition, and the testimony of McFadden must therefore be suppressed. Rev. St. U. S. § 865 [U. S. Comp. St. 1901, p. 663]; U. S. v. Bornemann (C. C.) 35 Fed. 824; Stewart et al. v. Townsend (C. C.) 41 Fed. 121.

The conclusion reached on the whole case is regrettable, as libelant sustained serious and lasting injuries, but the legal presumption that the respondent was not negligent has not been satisfactorily overcome. Proctors for libelant have shown much painstaking in their attempt to satisfy the court that the burden resting upon libelant is supported by the inferences and deductions drawn from respondent's proofs. Consideration of the entire case, however, as has been said, would seem to require a different conclusion.

The libel is dismissed, with costs.