NORTHAM et al. v. BOSTON & MONTANA CONSOL. COPPER & SILVER MINING CO.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1911.)

No. 1,949.

1. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO SERVANT—NEGLIGENCE—WHEN QUESTION FOR JURY.

While mere proof that a rock fell through one of the floors of the stope of defendant's mine and killed an employé might not be sufficient to establish defendant's negligence, when it is shown, not that there was a defect, but that the strength of the lagging composing the floor was insufficient to sustain the rocks which fell, and which had fallen at different times previously, a prima facie presumption of negligence is raised, which is not overcome by the testimony of witnesses that the lagging was such as was customarily used in other mines, or that it was reasonably safe, which is a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050; Dec. Dig. § 286.*]

2. NEGLIGENCE (§ 5*)—EVIDENCE—PROOF OF CUSTOM.

Evidence of custom may be admissible on the question of negligence, but cannot establish that what was in fact unnecessarily dangerous was in law reasonably safe, as against persons to whom there was a duty to be careful.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 7; Dec. Dig. § 5.*]

In Error to the Circuit Court of the United States for the District of Montana.

Action at law by Hedley Northam, by Myrtle Jones, his guardian ad litem, and Myrtle Jones, against the Boston & Montana Consolidated Copper & Silver Mining Company. Judgment for defendant, and plaintiffs bring error. Reversed.

On October 29, 1907, John Northam, while working in the mine of the defendant in error, received injuries which resulted in his death. The accident occurred on the ninth floor of a large stope, which was about 100 feet in height, 36 feet long, running east and west, and about 20 feet wide. The stope had been almost entirely filled with square sets of timbers, on which floors were placed, leaving a space between the floors of about 7 feet 10 inches. Beneath the ninth floor the stope was filled with waste rock; the ore having been taken out through an ore shute at the east end of the stope. Northam was working on the ninth floor with a pick and shovel and wheelbarrow, and was engaged in taking ore to the chute. On the tenth floor

---

*For other cases see same topic & § NUMBER in Dec. & . Digs. 1907 to date, & Rep'r Indexes

Bullock and Waters were engaged in completing the flooring, and were placing set timbers on the east end thereof. To make room therefor, they proceeded to excavate certain of the rock and earth, which they found in their way. There was a large rock, 250 or 300 pounds in weight, imbedded in the wall and projecting therefrom. Bullock sounded the rock by striking it with a pinch bar. He then inverted the bar and inserted the prying end, whereupon the rock, as soon as it was touched, came loose, fell to the floor, broke through it, and fell upon Northam, inflicting the injuries which caused his death. The plaintiffs in error, the widow and infant son of the deceased, in their complaint alleged negligence in three particulars: First, that the defendant in error negligently permitted a large rock to hang loose on the foot wall, which fell through the floor; second, that it negligently used lagging too thin for the floor above Northam's head; third, that the rock was negligently permitted to fall, that the defendant in error knew of the dangerous condition of the place in which Northam worked, or would have known it, had it used reasonable and ordinary care, and that it neglected to make the place safe, or to warn the deceased of the danger thereof, which danger he was not aware of, nor in the exercise of ordinary care would he have known it. At the close of the testimony, the court directed a verdict for the defendant in error, ruling that Bullock, who was in charge of the work on the tenth floor, was not the vice principal of the defendant in error, but was a fellow servant with the deceased. The floor through which the rock fell was composed of planks or lagging two inches in thickness. It was placed there for the men to walk on; also to keep the rock from going below while they were taking out the ore. There was evidence that prior to the accident rocks had gone through the lagging "at different times." On the trial the court excluded evidence offered by the plaintiffs in error for the purpose of showing that three-inch planking could have been used for flooring, and that, if it had been used, the accident would not have occurred. Bullock testified that in the Mountain View mine three-inch lagging was regularly used for flooring in the drifts, but that two-inch lagging was used in the stopes, and that it was reasonably safe.

J. O. Davies and Maury & Templeman, for plaintiffs in error.

Kremer, Sanders & Kremer, C. F. Kelley, L. O. Evans, and D. Gay Stivers, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The plaintiffs in error contend that the facts shown on the trial were sufficient to carry to the jury the question of the negligence of the defendant in error on the ground of its failure to inspect the mine, and in permitting a large rock projecting from the wall to remain for several days, where it was in danger of falling as soon as it was touched. We are not convinced that there was evidence sufficient to show negligence in that particular. The rock, imbedded as it was in the side of the wall, projecting, as witnesses variously testified, from three inches to a foot, would not necessarily import danger to the employés working as they were in a stope which was furnished with a series of floors, each constructed with a view to arrest upon its surface any rock that was likely to fall from the sides of the stope. There was little or no danger to the employés from rocks falling from the stope, unless the rocks went through the lagging. In view of the protection against injury which the lagging was intended to furnish, we doubt whether the duty of inspection should have gone further than an in-

spection of the lagging to see that it was sufficient for the purpose intended.

But a workman, engaged in working in a stope such as that in which the deceased was at the time when he was killed, is entitled to the protection of a reasonably safe roof over his head. Bunker Hill & Sullivan Mining Co. v. Jones, 130 Fed. 813, 65 C. C. A. 363. Of the obligation of the master to provide a safe place to work, it was said in Patton v. Texas Pacific Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361:

"He is bound to take reasonable care and make reasonable effort, and the greater the risk which attends the work to be done, and the machinery to be used, the more imperative is the obligation resting upon him. Reasonable care becomes, then, a demand of higher supremacy, and yet in all cases it is a question of the reasonableness of the care; reasonableness depending upon the danger attending the place or the machinery."

[1] Mere proof of an accident resulting in injury to a servant while in the service of his master, through a defect in machinery, structure, or appliance, is not of itself sufficient to establish the master's negligence; and where the evidence shows that the accident might have occurred from one of several causes, for some of which the master is responsible, and for others of which he is not, the jury is not permitted to say that it resulted from a cause for which the master was liable, unless there is in the evidence satisfactory foundation for that conclusion. Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361. And mere proof that a rock fell through one of the floors of the stope of the defendant in error's mine and killed an employé might not be sufficient to establish negligence on the part of the employer. In such a case, ordinarily, the rule of res ipsa loquitur does not apply. Such an accident might result from an unknown and undiscernible defect in the lagging. But when it is shown, not that there was a defect, but that the strength of the lagging was insufficient to sustain the rocks which fell, and which had fallen at different times in the progress of the work, a prima facie presumption of negligence arises, and it is not overcome by the oral testimony of witnesses who testified that it was reasonably safe. No amount of testimony of that nature can avail to prove a working place to be safe which is obviously unsafe. In the testimony, therefore, that rocks had fallen upon and gone through the lagging at different times, and that the deceased was killed in the manner proven on the trial, there was evidence tending to show negligence on the part of the defendant in error, negligence in failing to furnish and use flooring of sufficient strength. Westland v. Gold Coin Mines Co., 101 Fed. 59, 41 C. C. A. 193; The Joseph B. Thomas, 86 Fed. 658, 30 C. C. A. 333, 46 C. C. A. 58; The Yoxford (D. C.) 33 Fed. 521; McFarland v. The J. C. Tuthill (D. C.) 37 Fed. 714. In Westland v. Gold Coin Mines Co. a workman was killed by the breaking and falling of a stull in the defendant's mine. The stull was erected by placing lagging on timbers running across a fissure in which it was built, and it was intended to be of sufficient strength to sustain a

weight of 20 feet of earth and rock. It broke and fell when there were but 9 feet of rock upon it. Said the court:

"The fact that the stull fell demonstrates that it was insufficient to support the load with which it was burdened at the time it fell. The case in hand, then, is not of that kind of which it may be said that the occurrence of the accident affords no evidence of negligence."

[2] It was not a conclusive answer to the negligence in furnishing insufficient lagging, as charged in the complaint, to show that the lagging was such as was usually used in that mining camp, or to produce the testimony of witnesses that it was reasonably safe. The question whether it was reasonably safe was for the jury to answer. The evidence of the custom in other mines was admissible for the value which it might have in informing the jury, but it could not be held conclusive of the question of the master's negligence. "Customary negligence, either on the part of himself or others, is no defense to the master." 26 Cyc. 1108. In Indermaur v. Dames, L. R. 1 C. P. 274, Willes, J., said:

"No usage could establish that what was in fact unnecessarily dangerous was in law reasonably safe as against persons to whom there was a duty to be careful."

In Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905, the court said:

"What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

In Sawyer v. J. M. Arnold Shoe Co., 90 Me. 369, 38 Atl. 333, the court said:

"Ordinary care is such care as persons of ordinary prudence would have exercised under like circumstances. It does not depend upon custom. It would be no excuse for a man for a want of ordinary care that carelessness was universal about the matter involved, or at the place of the accident, or in the business generally"—citing Mayhew v. Mining Co., 76 Me. 100.

In Siversen v. Jenks, 102 App. Div. 382, 92 N. Y. Supp. 382, the court held that the fact, if established to the jury's satisfaction by the evidence, that the scaffolding furnished plaintiff for his use as an employé by the defendant was, through negligence in its construction arising from the omission of the use of spreaders, or from any other cause, unsafe, unstable, and improper, and not so constructed, placed, or operated as to give a proper protection to the life and limb of the plaintiff, warranted a verdict in his favor, without reference to the question of an established custom among dock builders as to their use or omission. Of similar import are Lake Erie & W. R. Co. v. Mugg, 132 Ind. 168, 31 N. E. 564; Austin v. Chicago, R. I. & P. Ry. Co., 93 Iowa, 236, 61 N. W. 849; Reichla v. Gruensfelder, 52 Mo. App. 43; Colorado Midland Ry. Co. v. Brady, 45 Colo. 203, 101 Pac. 62; Lyon v. Bedgood, 54 Tex. Civ. App. 19, 117 S. W. 897; McCormick Harvesting Mach. Co. v. Burandt, 136 Ill. 170, 26 N. E. 588; Chicago, M. & St. P. Ry. Co. v. Carpenter, 56 Fed. 451, 5 C. C. A. 551.

The judgment is reversed, and the cause is remanded for a new trial.