WHITE v. JOHN W. COWPER CO.

(District Court, W. D. New York. July 31, 1919.)

No. 1128.

1. MASTER AND SERVANT ☞129(1)—MASTER'S LIABILITY FOR DEATH OF SERVANT—UNSAFE PLACE TO WORK.

An employer *held* liable for the death of an inexperienced employé, who was drowned on falling from a gangplank over which he was wheeling sand from a sand barge onto a scow; the proximate cause being the loading of a pile driver on the scow, causing it to settle in the water, and giving the gangplank an incline, which made it springy and unsafe.

2. ADMIRALTY ☞20—JURISDICTION—SUIT FOR WRONGFUL DEATH.

A court of admiralty *held* to have jurisdiction of a suit to recover for the death of an employé, killed while working on a barge anchored in navigable water.

In Admiralty. Suit by Charles A. White, administrator of the estate of Calogero Falzone, deceased, against the John W. Cowper Company. Decree for libelant.

Horace O. Lanza, of Buffalo, N. Y., for libelant.
Ulysses S. Thomas, of Buffalo, N. Y., for respondent.

HAZEL, District Judge. The deceased, one Falzone, 25 years of age, was engaged, at the time of his drowning, in rolling a wheelbar-

row loaded with sand and gravel over a gangplank from a barge to a so-called construction boat—a boat or scow smaller than the sand barge, anchored alongside and adjacent to the shore—and then over another gangplank to the shore. When he began his work the barge was low in the water because of her load, which made it impossible to go closer to the shore. At that time the boats were practically on a level, but as the unloading proceeded the barge rose in the water, while the scow sank deeper, as a large pile driver was placed on her flat deck about noon by the respondent, which increased the incline of the gangplank between the two boats. There is dispute as to how much higher the gangplank was at one end than at the other; libelant's witness putting it at about 6 or 7 feet, while the respondent says the difference was about 2½ feet. Considering that more than one-half of the sand had been unloaded at the time of the accident, and a heavy machine placed on the scow, I think it not unlikely that the difference was approximately 4½ feet, and that the springiness of the gangplank increased. The gangplank, which consisted of three boards or planks put close together, had a 2x6 cleat on the under side to hold them together, but according to the evidence this did not prevent springing. The deceased was inexperienced in unloading a sand barge over a gangplank extending from one boat to another.

[1] The main grounds of negligence attributed to respondent are fault for not sufficiently stiffening the gangplank by a stiffening timber placed lengthwise on the under side thereof, and, generally, failure to supply a reasonably safe place to work, in that by placing the pile driver on the construction boat a dangerous incline of the gangplank was created, which the deceased could not have anticipated. While it is true that the master does not insure the safety of the employé, he is nevertheless required to exercise reasonable care, in view of the character of the work, to furnish a suitable place for its performance and reasonably safe materials to enable the workman to do the work with reasonable safety to himself; and in admiralty he is liable for the acts and negligence of the crew in that regard. The Saranac (D. C.) 132 Fed. 938, citing Gerrity v. The Bark Kate Cann (D. C.), 2 Fed. 245. This is not a case where the place became dangerous during the progress of the work, owing to changing conditions. True, the gangplank became somewhat springy while the barge was being unloaded; but it became dangerously springy as a result of placing the pile driver on the scow, which increased the incline. The additional danger inherent in this, because of his inexperience, was not apparent to deceased. A stronger man than he very likely could have held the loaded wheelbarrow to the deck of the scow, but the increased springiness—an intervening cause—was, I think, the proximate cause of the accident. The cleats under the gangplank held the planks together, but the blocks which were placed 4 or 5 feet from the end of the scow to keep them from springing did not accomplish this end.

The true test of assumption of risk is said by the Supreme Court of the United States in Gila Valley R. R. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521, to be whether the defect is known or plainly observable by the employé, and not whether he exercised care to

discover a dangerous condition. He does not assume risk arising from a defect that is attributable to the employer's negligence, until he becomes aware of such defect, or unless it is plainly observable, so that a presumption arises that he knew it. Ches. & Ohio Ry. Co. v. De Atley, 241 U. S. 315, 36 Sup. Ct. 564, 60 L. Ed. 1016. In the exercise of due care the employer in my opinion should have provided means for eliminating the danger arising from placing the pile driver on the scow, which increased the risk of wheeling the loaded wheelbarrow over it, almost immediately causing the accident. The deceased could not have known of the increased springiness without going over the gangplank, and he had a right to presume that the changed position of the planking had not only received the attention of the master, but that the latter had performed the duties of care and vigilance required of him by law.

The deceased made no objection to working under the original conditions, and may not have regarded it hazardous to do so. It does not appear how often he went over the gangplank in the afternoon just before the accident; but as the work did not begin until 1:30, after the noonday meal, and as the increased peril does not seem to have been comprehended by him, he in my opinion neither assumed the additional risk, nor was he guilty of contributory negligence.

[2] As to jurisdiction: The barge was moored in navigable waters, and the character of the work was such as to confer a right to redress in admiralty. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; So. Pac. Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086 L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. A claim for compensation under the Compensation Act of this state (Consol. Laws, c. 67) was originally presented to the Compensation Board, but an award was opposed by respondent on the authority of the Jensen Case, supra. Section 24(3) and section 256(3) of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091, 1160 as amended by Act Oct. 6, 1917, c. 97, §§ 1, 2, 40 Stat. 395 [Comp. St. 1918, § 991, subd. 3, and section 1233, subd. 3]), relating to jurisdiction in admiralty causes, were amended to include the words "and to claimants the rights and remedies under the Workmen's Compensation Law of any state"; but I think that since this amendment was not passed until after this cause of action accrued, this court was not deprived of jurisdiction to determine the issues presented.

The deceased is survived by his widowed mother, an alien, to whom he sometimes made remittances, to what amount annually does not appear. He also has a dependent brother 17 years of age, living in Italy. It is obviously not a case for a large recovery, owing to the insufficiency of proof as to dependency, and I think an award of $1,800 fairly adequate. Approximately an equal amount would, I believe, have been awarded if the Workmen's Compensation Act applied, and the commissioners, before whom the claim was filed by libelant before this action was brought, had retained jurisdiction.

A decree for libelant, with costs, may be entered.