## THE GLADIOLUS.[1]

*(Circuit Court, S D. Georgia. December, 1884.)*

INJURIES TO STEVEDORE—NEGLIGENCE.

The steam-ship employed a firm of stevedores to prepare the ship for cargo, and to stow cargo. They sent a gang of men on board, who found the upper hatches closed and certain of the lower ones open. They prepared the ship to receive cargo, and left her in the same condition, as to the hatches, that they had found her in. The next day another gang of men, of which the husband of the libelant was one, was sent by the stevedores into the hold to receive and stow cargo. While doing so, the husband of the libelant, while searching for some dunnage, fell or stepped through one of the open lower hatches into the hold, and received injuries from which he afterwards died. *Held*, there was no duty on the part of the master and crew of the steam-ship to look to the hatches and

1 Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

preparations to receive the cargo, nor neglect of duty in leaving the hatchway uncovered through which the husband of libelant entered and met his injuries; and that there was negligence in the husband of libelant going to the hatchway without procuring sufficient light, if light was necessary; and if there was negligence in not removing the upper-deck hatches over the one into which the husband of libelant fell, it was the negligence of the stevedore and his gang when they first came on board.

Admiralty Appeal. S. C. 21 FED. REP. 417, affirmed.

*Richards & Heywood, Garrard & Meldrim,* and *I. R. Saussy,* for libelant.

*A. Minas* and *Chisholm & Erwin,* for claimant.

PARDEE, J. This cause came on to be heard on appeal from the district court on the transcript and evidence, and was argued. Thereupon the court, being fully informed in the premises, doth find the following as the facts in the case:

*First.* The iron steam-ship Gladiolus arrived in the port of Savannah about the middle of September, 1882, from New York, to be loaded with cotton at Savannah. In addition to other holds for cargo, the Gladiolus was furnished with a cross coal bunker, forward of the engine-room, used and intended for reserve coal, but frequently for carrying cargo. This reserve or coal bunker was separated from cargo hold No. 2 by an iron bulk-head up to the lower deck, and above that, between-decks, by a permanent wooden bulk-head, in which were two sliding doors over 12 feet apart, which doors, when opened, were 3 feet 7 inches wide, leading from between-decks over hold No. 2 to between-decks over the reserve coal bunker. Abaft this partition, between the sliding doors, was the hatchway of the reserve coal bunker. It was 12 feet long athwart ship, 3 feet 10 inches wide fore and aft, and 16 feet deep. It was surrounded with the usual coamings, about 5 inches high. From the side of the sliding doors on the starboard side to the coamings of this hatchway the distance was 18 inches. Hatchway of hold No. 2 was 25 feet 8½ inches fore and aft, and 12 feet wide. The hatchways of hold No. 2, and of the reserve coal bunker, were provided with hatches for the upper decks and for the between-decks. On the voyage from New York coal was used for the ship from the reserve coal bunker, apparently carried through the sliding doors, and when the ship arrived at Savannah this coal bunker was about half full.

*Second.* The ship employed Reilly Bros., stevedores, to prepare the ship for cargo, and to stow cargo; and so, on the nineteenth day of September, while the ship lay at the wharf, they sent a gang of men to remove the coal from the coal bunker, and otherwise prepared the ship for cargo. This gang of men found the hatches over the hatchways on the upper deck, but the hatches between-decks, of hold No. 2, and of the reserve coal bunker were off, and the sliding-doors were open. The men removed the hatch on the upper decks over the coal bunker, removed the coal through the coal-bunker hatchways to an-

other part of the ship, swept out the hold and prepared it for cargo, and they left the ship on the evening of the 19th, with regard to hatches and hatchways, as they found it; that is, the upper-deck hatches on, the between-deck hatches off, and the sliding doors open. On the morning of the 20th, a bright, clear day, about 9 o'clock, the stevedores sent a gang, of which James McGinty was "header" or foreman, to stow cargo, first in hold No. 2. This gang found the hatches in the condition they were left the night previous by the first gang of men. They removed the hatches on the upper deck over hold No. 2, and McGinty and his men were sent down by the stevedore to get ready to stow cargo. When about three bales of cotton were sent down, the men called for "toms," which are short pieces of wood used in stowing cargo, and one of the gang started to go through the sliding door in search of this dunnage, when McGinty said he would get the toms or dunnage for them. He went through the sliding door, and almost immediately either fell or stepped in the coal-bunker hatchway, falling about 16 feet, and receiving such injuries thereby that he died in about six hours. There was no connection between the two stevedore gangs of the nineteenth and twentieth of September, except that each was employed by the same stevedore, under the same general contract, to prepare ship for cargo and to stow cargo.

*Third.* It is usual and customary for the ship to furnish toms or dunnage for properly stowing cargo, and it is usual for the stevedore's men in loading a ship, when such dunnage is not found to hand, to hunt it up, and to search through the ship therefor. There was sufficient dunnage aboard the ship,—some in hold No. 2, not, however, considered of the proper length and kind,—and there was some dunnage between-decks over the coal bunker, the same being boards which were afterwards used in stowing the cargo.

*Fourth.* James McGinty was a longshoreman engaged in that business 12 or 13 years. Had often been engaged in loading steam-ships with cotton in the port of Savannah, and his usual earnings were six dollars per day each day that he worked, and he was generally employed. James McGinty left the libelant, his widow, and three minor children, who were dependent upon him for support.

*Fifth.* The master of the Gladiolus, on the nineteenth and twentieth of September, was on board his ship. He knew of the work done by the first gang on the 19th, and he was present when McGinty with his gang came to stow cargo. He had made no previous examination of the condition of the hatches between-decks and of the sliding doors before or at the time McGinty and his gang arrived, and he made no preparations to light the holds for the stevedore's men. He gave no orders to nor exercised any control over them.

*Sixth.* There was no duty upon the part of the master and crew of the Gladiolus to look to the hatches and preparations to receive the the cargo, nor neglect of duty in leaving the doors open and the hatch-

way uncovered, through which McGinty entered and met his injuries.

*Seventh.* The ship, for preparations to receive cargo, and in receiving cargo, was under the control of the stevedore and his respective gangs of men.

*Eighth.* McGinty was negligent in entering the between-decks over the coal bunker without first procuring sufficient light, if light was necessary.

*Ninth.* If there was negligence in not removing the upper-deck hatches over the coal bunker, it was the negligence of the stevedore and his gang when they first came aboard.

And the court doth find, as a conclusion of law, (1) there was no negligence upon the part of the ship, or its master and crew, resulting in the death of McGinty; (2) that the libel ought to be dismissed.

Considering the foregoing findings of law and fact, it is ordered, adjudged, and decreed that the libel in the case of Margaret McGinty against the steam-ship Gladiolus be, and the same is hereby, dismissed, with costs of this court. Costs of the district court to remain as taxed by the judge thereof, to-wit, to be paid by claimant.