## THE JERSEY CITY.[1]

### DOYLE v. THE JERSEY CITY.

*(District Court, S. D. New York. May 4, 1891.)*

NEGLIGENCE—PERSONAL INJURY — FALL THROUGH HATCHWAY — DUTY TO CHARTERER'S MEN.

Libelant was a stevedore, employed by charterers of part of the steam-ship J. C. to put up a refrigerator in the hold. On leaving work at midnight, he fell down the hatchway, and libeled the vessel for injuries thereby received, claiming fault in that the hatch was not covered, and lights maintained about the opening. The evidence showed that it is not customary to cover the hatchways until the cargo is in. The open hatch was known to the libelant, and was the customary opening. The charterers supplied lights to the workmen. When libelant fell, one was burning within six feet of the hatch. *Held,* that the ship was not under any duty to supply lights or to cover the hatches for the charterers' men, nor was libelant's fall due to the lack of light, but to his own negligence. The libel was therefore dismissed.

In Admiralty. Suit to recover damages for personal injuries.

*H. H. Shook,* for libelant.

*Convers & Kirlin,* for claimant.

BROWN, J. The libelant was employed as a carpenter by the charterers of certain space on board the steam-ship Jersey City, as one of a gang of about 15 men, in putting up a refrigerator between decks abreast of No. 1 hatch. He began work at noon of February 10, 1890, and on quitting work at midnight, when about to ascend the ladder, he fell

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

through the open hatch at the foot of the ladder into the lower hold. His thigh was broken by the fall, and this libel is filed to recover damages. The alleged faults of the ship are that the hatch was not kept covered, and that lights were not maintained about the opening. The evidence shows that it is not customary on ship-board to cover the hatches between-decks while the vessel is in port until her cargo is loaded. The way to the between-decks was by a ladder that ran from the forward side of the upper hatchway perpendicularly down to the coamings of the forward side of the hatch below. The ladder was in the middle of that side, and about five feet from each corner. Stevedores were at work upon the cargo during the day, and had been going up and down by the same ladder into the hold below, so that that part of the hatch which was at the foot of the ladder was kept uncovered, in accordance with the usual practice. The only proper way of going to the ladder was from the deck immediately in front of the hatch. The libelant testifies that at midnight, on quitting work, he went to the side of the hatch near where he had been working, raised his foot to step upon covers which he supposed to be there, and at the same time reached forward for the ladder, but fell down the hatch, because no cover was there to step on. He says also that it was dark, because the lights were extinguished, as had been ordered. From other testimony, however, including some of the libelant's own witnesses, it is quite certain that there had been no covers at the foot of the ladder at any time during the day. The libelant, when he came down at noon, when he went up at 6 o'clock for supper, and when he came down again to work at 7 P. M., must have seen and known that there were no covers there. To repeated inquiries of the court, he would not say that at either of these three times he had stepped upon any covers in going down or going up the ladder; and it is plain that he had not. One of his own witnesses also testified that, instead of stepping in from the side of the hatch, he stepped upon the corner, and, as the ladder was five feet from the corner of the hatch, it is incredible that he should have stepped up from the side of the hatch where he was working, and at the same time reached out his hands for the ladder. Each of the workmen during the evening had been supplied with one or two candles. When the libelant fell, only a part of the candles had been extinguished, and one was burning within 6 feet of the hatch.

From these facts it is evident that the libelant's fall was owing to his own negligence alone. He knew perfectly the proper means of access to the ladder, and that there were no covers at the foot, and that he could properly approach the ladder in only one way, viz., the way he had gone three times. At midnight he was among the first to start to go up. It is likely that in his haste he stepped upon the corner, and rashly intended to walk upon the coamings to the ladder, instead of keeping on deck. Whether this be so or not, there was no fault in the ship towards him. In fact he was not in the employ of the ship at all, nor performing any work for her benefit. He was at work for the charterers, who were erecting a refrigerator on their own account, and at their own ex-

pense. The workmen were supplied with all necessary lights by the charterers. The ship was not under any duty to supply lights or to cover the hatches merely for the use of the charterers' men, nor was the libelant's fall in fact owing to any lack of light. The open hatch was fully known to him, it was the customary opening, and the only care necessary to avoid it was such ordinary care as all who work on ship-board are expected to exercise. *The Sir Garnet Wolseley*, 41 Fed. Rep. 896. If they do not take such care, it is at their own risk.

Libel dismissed.