## THE PROTOS.[1]

### CANNON v. THE PROTOS.

*(Circuit Court, E. D. Pennsylvania. December 11, 1891.)*

1. INJURY TO EMPLOYE—NEGLIGENCE.
    To leave a small trimming hole in the lower deck of a vessel, a short distance from the main hatch, open and unguarded, when the vessel was unloading, and the between-decks, where it was to be expected the stevedores discharging the cargo would necessarily go, was dark and unlighted, is negligence, for which the ship is liable. *The Helios*, 12 Fed. Rep. 732, followed.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    A stevedore engaged in unloading a vessel went between-decks to get his overalls and change his clothes preparatory to going to work in the lower hold. The between-decks was dark, and he fell through a "feeding hole." It was the ship's duty to keep the "feeding hole" closed. *Held*, he was justified in believing the hole closed, and was not guilty of contributory negligence.

3. SAME—LIABILITY OF VESSEL.
    A vessel is responsible for an injury happening to a shoveler employed by the stevedore that she employed to unload the vessel, when such injury occurs through her own unsafe condition.

In Admiralty. Appeal by respondent below, the steam-ship Protos, from a decree of the district court awarding $1,250 as damages for injury to person of libelant, Frank Cannon, incurred while unloading the cargo. Affirmed.

*John Q. Lane*, for appellant.

*John F. Lewis* and *John T. Murphy*, for appellee.

ACHESON, J. After a careful consideration of all the proofs, I am entirely satisfied with the conclusions of the district court, both as respects the facts and the law of the case. I find the facts to be as follows:

1. The libelant was a laborer under a head stevedore, who was employed by the master of the steam-ship Protos to unload her cargo of china-clay at the port of Philadelphia. The libelant was engaged on the vessel, as a shoveler, at this work, on Saturday, February 9, 1889; and, the discharge of the cargo not being completed on that day, he was told to return the next Monday morning.

2. When he quit work on Saturday, he left his overalls in the between-decks. Returning on Monday morning, the libelant, about 7 o'clock, went down the ladder of the main hatchway, used for storing and discharging of cargo, and got off at the between-decks, to get his overalls, and make the usual change of clothing preparatory to going down into the lower hold, where the clay yet to be discharged was; and, while thus engaged in getting on his overalls and changing his clothes, he fell through a small feeding or trimming hole down into the lower hold, breaking his arm, and otherwise injuring himself.

3. Feeding or trimming holes are used for trimming the cargo as it settles down. The one through which the libelant fell was about 3½ feet long by 2 feet wide, was about 20 feet in from the main hatchway,

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

in a dark place, and was flush with the deck. Upon this occasion, it was uncovered, and was not guarded by a railing or otherwise; neither was there any lamp or other light burning near it; nor was any warning given to libelant to avoid the danger.

4. It is usual and proper for the shovelers engaged in unloading a cargo to put their overalls in the between-decks, and there, also, the drinking water for the men is kept. Daniel Brew, the foreman of the head stevedore over the workmen who were engaged in unloading the cargo of the Protos, was called as a witness for the respondent, and upon his examination in chief thus testified:

"*Question.* In discharging the cargo that day, had the men employed by you in the discharge of that duty any business to go between-decks? *Answer.* Well, the hold had the clay in, and the men had to go between-decks to put their clothes there. They had no place else to put their clothes, because the clay was in the hold."

The fact was as thus stated by the witness.

### CONCLUSIONS OF LAW.

Undoubtedly, it was negligence for which the vessel is answerable to leave this small trimming hole open and unguarded in a dark place, where it might be expected the shovelers would go to put on their overalls and change their clothes, and where they had a right to go for this purpose. *The Helios,* 12 Fed. Rep. 732. The fact that the master had hired a head stevedore to unload the cargo did not relieve the vessel from liability for the injury the libelant sustained by reason of her unsafe condition.

I am of opinion that the evidence does not show contributory negligence on the part of the libelant. As the learned district judge well said, "he was justified in believing the passage safe, not only because of the respondent's duty to have it so, but also because he had found it safe on Saturday." It is true that since the appeal, and two years and six months after the accident, two of the respondent's witnesses, being recalled, testified that the small feeding holes in the between-decks of the Protos were open on the Saturday before the libelant was hurt. But, if these witnesses are to be understood as saying that they remember to have noticed that the particular feeding hole here in question was open on Saturday, it by no means follows that the libelant observed that it was uncovered.

The commissioner appointed to ascertain the libelant's damages seems to have proceeded carefully and intelligently, and his award was approved by the district judge. Taking into consideration the serious character of the libelant's injuries, his suffering, and the physical condition in which he was left, together with loss of time, the allowance of $1,250 does not strike me as excessive. The decree of the district court must be affirmed, and a decree in favor of the libelant entered in this court for the sum of $1,250, with interest from the date of the decree in the district court, together with the costs in that court and the costs in this court. Let such a decree be drawn.