HORNE v. GEORGE H. HAMMOND CO.

(Circuit Court of Appeals, First Circuit. October 29, 1895.)

No. 139.

1. REVIEW ON APPEAL—OBJECTIONS NOT RAISED BELOW.
   In an action for injuries caused a stevedore by falling down an open and unguarded hatchway, plaintiff cannot claim on appeal that the hatchway was so covered with tarpaulin as to lead one to think that it was properly covered and secured, if she made no such claim when the case was submitted for the rulings of the court on a request to direct a verdict for defendant.

2. LIABILITY OF VESSEL—OPEN HATCHWAY.
   An open hatchway on a ship, provided with the usual combings, is not ordinarily evidence of negligence on the part of the shipowner as regards one employed in loading the vessel.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by Laurette Estelle Horne, administratrix, against the George H. Hammond Company. There was a judgment rendered for defendant, and plaintiff brings error. Affirmed.

Eugene P. Carver, for plaintiff in error.

George Putnam, for defendant in error.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge. The plaintiff's intestate, for whose injuries this suit was brought, was a stevedore, having general charge of loading the ocean steamer Virginian, at Boston, with a general cargo, and working several gangs day and night. The injury occurred about half past 10 o'clock in the evening of January 24, 1887. The ship had three decks,—the main or spar deck, next below it

the steerage deck, and below that the orlop. At the time of the injury, and during the whole evening, one of his gangs was, and had been, working on the steerage deck, receiving cargo through the hatchway in the spar deck upon the hatch in the steerage deck, which was being used as a landing place. Their work, however, was on the forward port section of the hatch, from which point they were running the cargo forward. Expecting at any time cargo for the hold, they had left the hatchway in the orlop deck open. The defendant corporation had control of a space on the orlop deck for shipping meats, and the right to visit it for refrigerating purposes. The hatchway on the steerage deck was about 20 feet long and 10 wide, divided longitudinally by the strong-back, from which there extended each way to the hatch combings sections of hatch coverings about 5 feet long and 2½ feet wide. While the stevedores were at supper, the defendant's employés took off the after-starboard section or leaf of this hatch, and went below for icing the meats. About half past 7, while these employés were still below, the stevedores returned, and resumed work between the spar and steerage decks on the forward port side of the hatch. As to what lights they had there is no evidence in the case, except that one of the plaintiff's witnesses testified that "the deck of the steamer was lighted by lamps, candles." About half past 8 the defendant's employés, having finished their work, extinguished whatever light they had, and came up through the leaf or section of the hatch which they had removed, without replacing it, and without warning the deceased. The employé who last came up was called as a witness by plaintiff. He did not state why he did not replace the leaf, and was not even asked the reason; but whether there was enough in the case to enable a jury to find that the omission to replace it was without occasion we need not determine. The deceased was between-decks at the hatch during the evening, hurrying up his men; but whether or not he knew the leaf was off remains a matter of conjecture. About half past 10, as told by the only witness who claims to have seen him, he came down the ladder, which was close to the port edge of the strong-back, "and turned right off with his foot on the starboard, and went right down in the hold."

We have stated all the essential facts favorable to the plaintiff which the evidence proved or tended to prove, and also those favorable to the defendant which were not denied, or must be accepted as undeniable. The case went to a jury, which, under the direction of the court, returned a verdict for the defendant. The bill of exceptions commences as follows:

"This was an action of tort to recover damages for personal injuries to the plaintiff's intestate, Granville P. Horne, January 24, 1887, by falling through a hatchway on board the steamer Virginian, which hatchway, it was claimed by the plaintiff, was left open and unguarded by the negligence of the defendant. The writ is dated January 18, 1889. The pleadings are made a part of these exceptions."

Then follow the proofs in detail, the defendant offering none; and the bill closes:

"This was all the plaintiff's evidence except that relating to damages. The defendant thereupon moved that the court order a verdict for the de-

fendant on the ground that there was no evidence to support a verdict for the plaintiff, and, after hearing argument, the court, against the plaintiff's objection and exception, so ordered."

. The plaintiff's declaration contains, with others, the following allegation:

"And the plaintiff says that the said hatchway was covered by the defendant with a piece of canvas known as a tarpaulin, and said hatchway was thereby left in such condition that a person not knowing that the hatch was off would have believed it to be properly covered and secured."

In other words, the plaintiff declared in her pleadings, not only that the hatchway was left open and unguarded, but that by negligence it was left with a misleading and deceitful appearance. There was evidence which it is claimed had a tendency to prove this, and there was other evidence tending so strongly the other way that the plaintiff might well have doubted her ability to satisfy a jury on this proposition, and even to hold a verdict based on it if the jury gave it to her. On this writ of error she has, however, urged that she should have been allowed to go to the jury on this issue. But the opening part of the bill of exceptions limits the plaintiff. Whatever issues her declaration might have permitted to have been opened, she waived them all except one by the statement shown by the bill of exceptions. When the case was submitted for the rulings of the court, she claimed that the hatchway was left open and unguarded, without anything to show the court at that time that she made any other claims. The instances are so many in which we have held strictly that an appealing party cannot, unless in very exceptional cases, open issues here which were not specifically brought to the attention of the court below, that we need not dwell on this proposition. Non constat, if the plaintiff had advised the court below that she made also the claim now made to us, that the court would have refused to allow her to take it to the jury. The reference to the pleadings, so commonly and needlessly made in bills of exceptions, do not aid the plaintiff, as they are always a part of the record; and the question is not how broad they are, and what they would have permitted to be proven, but only what part of them was brought to the court's attention in connection with the specific ruling objected to.

Coming, now, to the only question before us, the issue is not so broad as to touch upon the duties and responsibilities connected with a ship's hatchways at all times or towards all persons, but only while the ship is under employment, or is in some state with relation thereto, and towards stevedores, mariners, and perhaps others commonly found aboard in connection with her service. These duties and responsibilities undoubtedly involve mixed questions of law and fact; but with reference to the ordinary class of cases, of which this is clearly one, the questions both of law and fact have come so often before the courts that they have settled into a well-known practical rule, which the courts will not allow juries to disregard. While, therefore, the issue is not wholly one of law, yet, if this case had been submitted to the jury without a peremptory instruction, and the jury had found against the rule, the court would properly have set aside the verdict; and it is now thoroughly settled in the federal courts

that under such circumstances the court should instruct the jury peremptorily. The rule applicable to the case was, perhaps, as well stated as anywhere by Judge Benedict in Dwyer v. Steamship Co., 1 Fed. 493, 495, 17 Blatchf. 472, 475, as follows:

"Hatchways are well-known features and sources of dangers on a ship. They are intended to be open a large portion of the time, especially when in port, not only for the purposes of loading and unloading cargo, but also for ventilation. An open hatchway on a ship, when provided with the usual combings, is not evidence of neglect of duty on the part of the shipowner."

Of course, these somewhat general expressions must be limited by the fact that the plaintiff in that case was employed in loading the ship. The rule is also well expressed by Judge Brown in The Jersey City, 46 Fed. 134, 136. The necessities and usages of commerce, and the uniform testimony by the admiralty courts to the existence of this rule, alike when it is in issue and when it is not, so support it, not only with reference to the main deck, but also with reference to between-decks, that it cannot be gainsaid. Of course, like all rules disposing of issues of mixed law and fact, the courts are not permitted to follow it implicitly except in what may be classed as ordinary cases. That the case at bar is of that character is plain, unless it be for the fact that the person who left the hatchway open did not leave any light in its neighborhood. The cases are at variance as to the effect of a circumstance of this character. The Gladiolus, 22 Fed. 454, 456; The Victoria, 13 Fed. 43, 44; The Argonaut, 61 Fed. 517, 518. We are, however, relieved from determining whether this fact makes the circumstances of the case extraordinary, because, when the defendant's employés came up through the hatchway, they found the stevedores about it with lamps and candles, as already stated; and there is no evidence from which the jury could find that it was not lighted as well as customary or practicable, or whether the deceased fell by reason of the want of light or through his own haste and inattention. The judgment of the circuit court is affirmed.