## THE NIKOLAI II.

### (District Court, S. D. Alabama. May 21, 1900.)

### No. 863.

1. ADMIRALTY—NEGLIGENCE—PERSONAL INJURY—EVIDENCE.

Libelant, who was one of a stevedore's gang employed in loading a vessel, while attempting at night to walk a beam that led to a wing between decks, where his hammock was swung, fell to the hold below, and was injured. On the question whether the master and crew were negligent in not having the between-decks properly lighted, the testimony was conflicting; libelant and others testifying that it was perfectly dark, or that the lamps were turned down so low that one could not see to walk the beam in question, while, on the other hand, it appeared that one of the gang was reading a newspaper 10 or 15 feet from the place where the libelant fell. *Held*, that the negligence of the master and crew was not established.

2. SAME.

If, when libelant descended the ladder to between-decks, he found it perfectly dark, so that he could not see where to walk, it was his duty to return up the ladder for a light, or attempt to get one.

3. SAME.

It being the custom for stevedores, employed in loading a ship, to furnish their own lights, the master and crew were not negligent in not keeping the between-decks lighted, to enable the stevedore's gang to reach their sleeping hammocks in safety.

In Admiralty. Libel for personal injuries.

The libelant was one of a stevedore's gang employed by the shipper to load the bark Nikolai II. The stevedores went aboard in the afternoon of the day before the loading was to begin. The vessel lay some distance off shore, and, as was customary in such case, the stevedores remained aboard both night and day during the period of loading. It was also customary at that season of the year for the stevedores to sleep between-decks, where they would swing their hammocks or put their cots for the purpose. The foot of the ladder leading to the between-decks rested on a cross beam 12 or 15 inches wide. Between the foot of the ladder and the decking in the wings of the vessel there were 7 or 8 feet on each side of the ladder over which there was no flooring, so that a person passing from the foot of the ladder to the wing decking must necessarily walk said beam. The libelant was acting cook for the stevedore gang, and some time after dark on the evening of the day on which he came aboard the vessel, in going to his hammock between-decks, he fell from the beam at the foot of the ladder into the hold below, and was severely injured, for which he brings this suit.

Denny & Wood and Gregory L. & H. T. Smith, for libelant.
Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge, after stating the case, delivered the following opinion:

The libelant was lawfully upon the ship, and was injured by falling into the hold. The question is, did his injuries result from the negligent failure of the officers of the ship to perform a duty necessary for his safety? There must be reasonable evidence of negligence on their part. The Germania, Fed. Cas. No. 5,360; The Gladiolus (C. C.) 22 Fed. 454; The Jersey City (D. C.) 46 Fed. 134; The Louisiana, 21 C. C. A. 60, 74 Fed. 748; The Max Morris (D. C.) 24 Fed. 860; The Saratoga, 36 C. C. A. 208, 94 Fed. 221; The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586.

It is not claimed by the libelant that the master and crew were guilty of any negligent act of commission which caused the injury complained of, but they are charged with an act of omission in that they omitted to keep the passway between the foot of the ladder leading to the between-decks and the wing decking between-decks safe and properly lighted. The evidence shows that the ladder, the passway, and the decking between-decks was such as is customarily found in vessels of the kind, build, and trade of this vessel. There was nothing unusual in their construction, and no special defect in them. The passway in question was commonly used, and shown by the proof to be reasonably safe. It was used by libelant's fellow stevedores on the same evening and night of his misfortune, and by some of them after dark, and but a short time before his accident.

On the question whether the between-decks were properly lighted there is some conflict of evidence. There is none, however, that they were lighted, except so far as libelant's testimony is concerned. He says it was perfectly dark. The evidence is not entirely harmonious as to the extent of the lighting; but from it we can have no doubt that Carr and Mitchell, the foremen or "boss" stevedores, were in their cots or hammocks some 10 or 15 feet from the foot of the ladder, and that they, or at least one of them, was at the time of the accident reading a book or newspaper. Some of the witnesses say there was but one lamp burning; others, that there were two. Suffice it to say there was sufficient light to see to read by. As to this there can be no serious dispute. Some of the stevedore gang came down between-decks after dark, and safely found their hammocks. One of them says his hammock was 40 or 50 feet from the ladder. Witness Jordan testifies that he saw libelant descend the ladder, and saw him as he reached the foot of it, but that before he saw who it was and could call to him he had fallen into the hold below. Jordan was some 15 or 20 feet away, laying in his hammock. He had during the evening swung libelant's hammock for him, but libelant had not been down between-decks to learn its location. One of the libelant's witnesses testifies that libelant fell while descending the ladder, and before reaching its foot. But he must be mistaken as to this. He is entirely uncorroborated.

When libelant descended the ladder, if it was as dark below as he

represents it to have been,—so dark that he could not see at the foot of the ladder what the passway was and in what direction to go, so dark that he "could not see where to walk,"—it seems to me that ordinary prudence and precaution required him to return up the ladder for a light, or to endeavor to get one, or while on the ladder to have called to his companion, Jordan, for a light, and particularly as he did not know where his hammock was swung, and had to depend on Jordan for information as to it. The statements of libelant, and of the witnesses who testify that it was perfectly dark, or that the lamps were turned down so low that a person could not see to walk the beam used as the passway between the foot of the ladder and the wing decking, are not only in conflict with much direct testimony on the subject, but are inconsistent with the circumstances shown by the testimony in that connection. Hence I am bound to believe that there was sufficient light to enable a person, exercising ordinary care, to have walked the passway to the wing decking. It is true that the ship did not furnish this light; but my opinion is that, under the circumstances of the case, it was not its duty to do so. It appears that it was customary for the stevedores to furnish their own lights, and that in this particular instance a number of them did so, as usual. The Auchenarden (D. C.) 100 Fed. 895. The unfortunate accident by which the libelant was injured was not attributable to any negligence or omission of duty of the master or crew of the vessel. The libel is therefore dismissed.