## THE SANTIAGO.

(Circuit Court of Appeals, Second Circuit. February 28, 1905.)

1. SHIPPING—LONGSHOREMAN—INJURIES—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.

Libelant, after cleaning up a dock, returned with other laborers to a barge, and went into an unlighted section of the hold, where they were to clean up ore left by the unloading machine. The men asked an employé of the vessel for lights, which it was his duty to furnish, and he promised to send them down immediately. While they were waiting for lights, libelant, without any obligation to do so, laid his shovel on an uneven pile of ore, in order to attend to the lowering of a bucket, and then climbed on the pile in search of his shovel, and, while groping about in the dark, fell from a higher portion of a pile, and was injured. *Held*, that libelant's contributory negligence in needlessly and recklessly climbing about on the uneven surface of the ore was the proximate cause of his injury.

2. SAME—NEGLIGENCE.

The vessel being under no obligation to light that section of the hold until its representatives were notified that the men were ready to work there, it was not guilty of negligence in failing to provide lights until within five or six minutes after libelant was hurt.

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here by claimant's appeal from a decree of the United States District Court for the Western District of New York awarding libelant $413.95 for damages for personal injuries. 131 Fed. 383.

J. H. Metcalf, for appellant.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. Libelant was a laborer in the employ of the Minnesota Dock Company, engaged in shoveling ore on the dock and vessels at the West Shore Docks, Buffalo. At about half past 1 o'clock on the morning of May 6th he was working in the hatch of claimant's barge Santiago, when he received orders from Nagle, the foreman of the Minnesota Dock, to clean up the dock. When this was done he returned with other laborers to the barge, went down a lad-

der into one of the hatches, and through a bulkhead into another section, where they were to go to work cleaning up the ore left by the unloading machine. The custom and course of employment on these barges was to clean up one hatch at a time, and then to move on to another hatch. It was the business of the vessel to furnish candles when needed; the candles and torches being thrown down to the men; the men lighting them, sticking them up, and shifting them from place to place, so as to throw light on the places where they were working. The men had asked for lights as they descended the ladder to the place which had been cleaned out. From there they went on to the place where they were to go to work, and called up to the hatch tender for lights, and he said he would send them down right away. While they were waiting for the lights, a bucket was sent down, and some one called out to pull in the bucket. Libelant saw the bucket coming, and set down his shovel on the top of a pile of ore in order to attend to the bucket. The ore in the hold at this place was of depths varying from two feet to six or seven feet. After the bucket had been pulled in and set down, and before the candles were thrown down, libelant climbed upon a pile of ore six or seven feet high to look for his shovel, and, while groping about for it in the dark, he fell down into a place where the ore was only two feet deep, and sustained the injuries complained of.

The court below held that claimant was negligent in failing to provide a safe place for the men to work, and that libelant was not guilty of contributory negligence. We are unable to concur in either of these conclusions.

It does not appear that libelant was bound to go to this place of danger when he did, or to do any work there until the customary lights were supplied. No reason is shown why he could not have waited on the deck until the lights were brought. It does not appear that any one ordered him to go down the hatchway—even to the safe place in the hold which had been cleaned out. But even if it be assumed that he went there under orders, the order was that of his foreman, and not of the watchman who represented the vessel, and who is not shown to have had any authority to give, or to have given, any orders to any one. The only other person who could have represented the vessel was the hatch tender, who sent down the bucket and called to the men to pull it in. But the witnesses testified that there was light enough above, so that they could see the bucket coming down, and that it was pulled in and set down in safety before libelant started to look for his shovel. Libelant and the other men had been sitting down, waiting for the buckets to come down, and had not begun work when he was injured. As his counsel says:

"The libelant did not, in the darkness, attempt to work. He did not attempt to fill the buckets or begin work. It is not too much to say that he was injured while waiting for lights."

The doctrine, therefore, of a safe place to work, or of being ordered to work in a dangerous place, can have no application here.

No testimony was introduced by claimant. But it appears from the testimony of the libelant himself that he voluntarily went below to a

place of safety; that he crawled from that place of safety to one of danger, and, when in said dangerous place, where he was under no obligation to use his shovel, and could not use it until the promised lights arrived, that he needlessly and recklessly climbed about on the uneven surface of the ore trying to find it, and while so doing was injured. The fact that he was under no obligation to work until the lights came appears from the foregoing facts, and, further, from the uncontradicted evidence that Nagle, his foreman, told the watchman, "if he didn't get some lights down there, he would take the machines out of the hold and send the men home."

In Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, plaintiff was a fireman on a passenger train of the defendant. After the return from one of his trips, he had gone aboard his engine for his own convenience, and, in attempting to get off the engine, he fell and was injured by reason of the turning of a step which was insecurely fastened. The court held that defendant was not liable, and said as follows:

"On the other hand, it must be remembered that the plaintiff, who knew that the engine was to be taken to the roundhouse at El Paso and inspected and repaired before he was called upon to perform any duties upon it, for his own convenience, before such inspection and repair, went on the engine and attempted to discharge his duties of cleaning, etc. If he, knowing that there was to be an inspection and repair, and that he had ample time thereafter to do his work, preferred not to wait for such inspection and repair, but to take his chances as to the condition of the engine, he ought not to hold the company responsible for a defect which would undoubtedly have been disclosed by the inspection, and then repaired."

In The Saratoga, 94 Fed. 221, 36 C. C. A. 208, libelant was one of a gang of men engaged in coaling a steamer. He worked on the vessel until the foreman called out to put out the lights and go ashore. The libelant did not happen to have a light in his hand, but there were other men designated to provide lanterns, and two of the lanterns remained lighted. The libelant went to get his coat, and then started for the port by which he had come aboard. The foreman told him to go out the other way. "Without waiting for the lantern held by those closing the port, or for the other in use where Vaughan was collecting the shovels, and without taking up any of those standing on the deck, and making an effort to relight it for his individual use, libelant turned and walked straight for the hatch ladder; and, 'not knowing,' as he says, 'that the hatch cover was off,' he fell through the opening into the hold." In these circumstances, this court held that claimant was not liable, and that the proximate cause of the accident was the negligence of libelant and of his fellow workmen in failing to avail themselves of the lanterns furnished them to guide themselves.

Inasmuch as libelant's contributory negligence would only deprive him of one-half of his damages, it is necessary further to inquire whether claimant was negligent. There is nothing in the record on which any such claim can be founded. It does not appear that any one representing the vessel had any communication with the libelant. The vessel was under no obligation to light up this section of the hold until its representatives were notified that the men were ready to go to work there. It does not appear that claimant unreasonably delayed to fur-

nish lights after they were called for. They came within five or six minutes after libelant was hurt. He testified that when he got hurt, and was sitting on the ore pile, he saw the watchman there with the candles he had brought down with which to light the hold.

The decree of the District Court is reversed, and the cause remanded, with instructions to dismiss the libel.