## HARDIE v. NEW YORK HARBOR DRY DOCK CORPORATION.

(Circuit Court of Appeals, Second Circuit. November 16, 1925.)

No. 79.

1. **Master and servant ⚖233(2)—Servant chooses dangerous way at his peril.**

If there be two ways, one safe and the other dangerous, servant chooses the dangerous way at his peril, if the difference is known to him.

2. **Master and servant ⚖233(2)—Employer not liable for injuries to experienced servant, using dark passage on main deck in preference to safe passage over bridge deck.**

Ship repairer *held* not liable for injuries sustained by experienced employee, falling into open coal hatch, in using dark passage on main deck in preference to safe passage over bridge deck to reach place of work, as it could not be inferred that he did not know of safe way.

3. **Master and servant ⚖150(2)—Ship repairer held not chargeable with ship's negligence in leaving hatch open or liable for failure to warn employee.**

Ship-repairing company was not chargeable with ship's fault in leaving hatch open, or liable for failure to warn employee of dangers, where employee who fell therein was equally familiar with the conditions as the ship-repairing company.

4. **Shipping ⚖84(3)—Not negligence to leave cargo hatch open when awaiting cargo, though it is to leave coal hatch open.**

It is not negligence to leave a cargo hatch open, if ship is awaiting cargo, though it is negligence to leave a coal hatch open.

5. **Master and servant ⚖281(1)—Contributory negligence need not be proved beyond every theoretical possibility.**

Though burden of proving servant's contributory negligence is on employer, he is entitled to insist on such inferences as reasonable men must make, and is not bound to exclude every theoretical possibility.

**6. Master and servant ⊚⟹233(2)—Employee negligent in trusting himself to darkness of ship's deck.**

Ship repairer's employee, falling into open hatch, was guilty of negligence in trusting himself to darkness of ship's deck, which he had not tried, and about which he knew nothing, without a light, where a safe way was open to him.

In Error to the District Court of the United States for the Southern District of New York.

Action by Jane M. Hardie, as administratrix of the estate of Peter Hardie, against the New York Harbor Dry Dock Corporation. Judgment entered, dismissing action, and plaintiff brings error. Affirmed.

Writ of error to a judgment of the District Court for the Southern District of New York, dismissing a complaint in an action at law at the close of the plaintiff's case. The action is by the widow of Peter Hardie, as administratrix, for damages caused by the negligence of the defendant, New York Harbor Dry Dock Corporation, resulting in her husband's death, and the only question involved is whether there was evidence which should have gone to the jury.

The defendant was a ship repairer in Staten Island, New York; the intestate, a machinist's helper, who had been 6 months in its employ, was 51 years old, and had "all his life" been engaged on ships, repairing boilers and engines. Between 4 and 4:30 o'clock on the afternoon of November 6, 1920, the defendant directed the intestate to work upon the boilers of the Cusco, a ship made fast outside another, lying alongside one of its wharves. After crossing the first ship, the intestate reached the fore main deck of the Cusco, and had to go aft to reach his place of work. Two routes were open to him. By the first he might go up an iron ladder of nine or ten rungs to an upper or bridge deck, along which he could then walk aft till he reached another iron ladder descending to the engine room. This route was all open to the light of day. By the other route he must enter an open door in a partition rising from the main deck and walk about 150 feet aft, to an after partition in which there was another open door in line with the first. This route was dark, because the sides of the ship went up as high as the bridge deck and with the forward and after partitions inclosed this portion of the main deck.

In line with the two doors, and therefore with the straight path, was an open coal hatch about 4 feet square. About 2 feet forward of the hatch ran a pipe thwartships, the top of which was 6 or 8 inches above the deck. Both the open hatch and the pipe were quite hidden in the darkness to any one passing from door to door. The intestate, in some way not disclosed, while passing to his work in the engine room of the Cusco, fell through the coal hatch into the bunkers, and received injuries of which he died. The plaintiff charged the defendant with failure to cover the hatch, to light the main deck, to give warning of the danger, and in general to furnish the intestate with a safe way to his work. The defendant charged the intestate with using the passage without proper care.

Before the intestate fell into the coal hold, a machinist had safely preceded him over the deck and reached the engine room. He saw the open hatch, because he lighted a match, when his foot touched the thwartships pipe already mentioned. Two other machinists came after the first but before the intestate. They went up the ladder, over the bridge deck, and down the after ladder to the engine room.

The District Court dismissed the complaint, because the plaintiff had failed to show any failure of duty on the defendant's part, and had affirmatively shown negligence on the intestate's.

Richard H. McIntyre, of New York City (Wesley M. Messersmith, of New York City, of counsel), for plaintiff in error.

A. G. Maul, of New York City (John McK. Minton, Jr., of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] We cannot see that the defendant failed to furnish the intestate with a safe way to his work. The route over the bridge deck was certainly such, and it was obviously open to those who did not care to use the dark route over the main deck between door and door. Two of the intestate's fellows had used it before him, and it was a compliance with the master's duty to furnish a safe way. If there be two ways, one safe and the other dangerous, the servant chooses the dangerous way at his peril, if the difference is known to him. Beulah Coal Co. v. Verburgh, 292 F. 34 (C. C. A. 8); Williams Cooperage Co. v. Headrick, 159 F. 680, 86 C. C. A. 548 (C. C. A. 8); The Indrani, 101 F. 596, 41 C. C. A. 511 (C. C. A. 4).

[2] It seems to us beyond any fair difference of opinion that the intestate knew the safe way and the possible dangers of the other.

He was 51 years old, for over 30 years had worked about ships on their engines and boilers, and had worked nowhere else. In the absence of any proof to the contrary, to say that at a glance he did not see that he could have gone over the bridge deck, as two of his fellows had just done, is contrary to every reasonable inference. To say that he did not know that in walking through the dark passage of the main deck he might encounter obstacles, and might find open hatches, is equally so. Decks have hatches, pipes run across them, hatch covers are repeatedly left off, as the multitude of cases in the books alone prove. He knew and he chose; the defendant was not at fault for that choice.

[3, 4] The case does not involve the ship, which left off the cover. The defendant had nothing to do with that, and could not be at fault for it. There is no suggestion that it had notice of it, and the limit of its duty was to advise the intestate that there might be open hatches or other dangers by the route which he took. But that is only the same question in another form. Such advice would have seemed absurd to him. He knew the facts as well as any one could. It makes no difference that this was not a cargo hatch, which it is not negligent to leave open, if the ship is awaiting her cargo (The Saratoga, 94 F. 221, 36 C. C. A. 208 [C. C. A. 2]), but a coal hatch which it is (The Helios [D. C.] 12 F. 732; The Guillermo [D. C.] 26 F. 921; The Protos [C. C.] 48 F. 919). The defendant is not chargeable with the ship's fault. And so we think that the evidence showed no fault in the defendant, and this was enough to justify the dismissal.

The same question again comes up on the issue of contributory negligence. If it is hard to see how a master may be charged with fault for failing to warn a servant, equally familiar with itself of the conditions he may meet, it is equally hard to see how the servant can be free from fault, if he invites the danger. In The Saratoga, supra, we held that a stevedore was negligent who failed to use lights which were provided and fell into the hatch. We made the same ruling in The Santiago, 137 F. 323, 69 C. C. A. 653, in respect of a laborer working in a dark hold. The Circuit Court of Appeals for the Eighth Circuit held a workman at fault for going to his locker near an engine pit in the dark. North. Pac. Ry. v. Post, 170 F. 943, 96 C. C. A. 153. So also in The Gladiolus (D. C.) 21 F. 417, affirmed (C. C.) 22 F. 454; The Jersey City (D. C.) 46 F. 134; The Nikolai II (D. C.) 102 F. 174. While the Circuit Court of Appeals for the Fourth Circuit by a divided court exonerated a carpenter under somewhat similar circumstances, in Burrell v. Fleming, 109 F. 489, 47 C. C. A. 598, it does not appear how familiar the plaintiff was with ships.

The same rule does not apparently apply in the case of landsmen. The Guillermo, supra; Ward v. Dampskibselskabet, etc. (D. C.) 136 F. 502. In The Helios, supra, although it was a stevedore who was injured, the mate had told him that the vessel was ready, and this was treated as a warranty.

The rule in New York, though in no sense controlling upon us, goes even further, and apparently makes it contributory negligence per se for any one to go through a dark passage without finding out what may be the obstructions. Rohrbacher v. Gillig, 203 N. Y. 413, 96 N. E. 733. We need not go so far.

Our decision in Drowne v. Great Lakes Trans. Co. (C. C. A.) 5 F.(2d) 58, is not in point. The intestate there fell into the manhole by an involuntary movement. His act of pulling upon a hatch cover 6 or 7 feet away from the manhole was not the proximate cause of his eventual fall.

[5] Finally, it is argued that we do not know how the intestate fell; for all we can tell, he may have used proper care in passing through the passage. While we, of course, agree that the burden is on the defendant, it is entitled to insist upon such inferences as reasonable men must make; it is not bound to exclude every theoretical possibility. And when it has shown how the accident must have happened, it is entitled to ask us to fix the outside limits of the standard of care which was required of the intestate. It is, indeed, conceivable that he became suddenly ill; but short of that we can see no reasonable explanation but that he tripped or stepped over the pipe and fell into the hold. He could not have done either, if he had used a light, or cautiously proved each step with his feet.

[6] Such, so far as we can see, were the limits of rational conclusion to which the jury was confined, and we are bound so to confine them, if verdicts are to be treated rationally at all. Given the facts, it is true that they have a latitude in fixing the standard of care required. We recognize that we must not substitute our own, as we do in causes in the admiralty. But here, too, there are limits, unless the jury is to be all in all. We say that it is beyond any reasonable limit to say that a man, familiar with the possibilities,

may trust himself to the darkness of a ship's deck, which he has not tried, and about which he knows nothing and can learn nothing without light. If he does, he must so feel his steps that each shall be safe; else he has plainly risked that it may find no footing.

Judgment affirmed.