## AMERICAN SURETY CO. OF NEW YORK v. JAMES A. DICK CO. et al.

Circuit Court of Appeals, Eighth Circuit.
December 24, 1927.

No. 7857.

1. Highways ⚖➔113(5)—Highway contractor's bond indemnifying state against loss from principal's default, negligence, or omission, held to render surety liable to individual claimants against contractor.

Highway contractor's bond, entered into in New Mexico, running to state, and conditioned on principal's performance of all obligations thereunder, and on saving state harmless against damage or loss for which state might become liable by principal's default, negligence, or omission, held to render surety liable to individuals having claims against contractor, as well as to state itself, especially in view of law of New Mexico, and fact that suit was brought by surety to have its aggregate liability on bond determined and to restrain claimants from instituting actions in other courts, on theory of its liability to numerous claimants.

2. Appeal and error ⚖➔882(3)—Surety, suing individual claimants to have liability on highway contractor's bond prorated, could not assert on appeal that bond protected state only.

Where surety on highway contractor's bond was threatened with multiplicity of suits, and brought action to have all claims prorated according to penalty of bond, and case was tried on such theory, surety could not on appeal claim that bond was for benefit of state only.

3. Highways ⚖➔113(5)—Surety's obligation was determined by language of highway contractor's bond, though bond was broader than law required.

Obligation of highway contractor's bond was determined by its language, and surety was lia-

ble according to its terms, even though bond may have been broader than required by statute.

4. Highways ⚖➔113(5)—Claims for feed for horses, board for workmen, and lumber for building camps held within highway contractor's bond running to state.

Claims presented in connection with building of state highway for furnishing feed for horses, and provisions and board for men, and lumber in building of camps and storerooms, held within purview of highway contractor's bond, conditioned on performance of all obligations under contract and principals' indemnifying state against any damage or loss "by the default of said principals, or by reason of any negligence or carelessness, * * * or on account or omission * * * in the performance of this contract."

5. Courts ⚖➔356(5)—Master's final report was conclusive, where no exceptions were filed, other than objections to proposed report (equity rule 66).

Where objections were filed only to proposed report of master, without filing exceptions to master's final report, completed and filed, as provided by equity rule 66, no issue was joined on completed final report, and report, confirmed by trial court, was therefore conclusive on appeal, since objections to proposed report were simply an endeavor to induce special master to change his report.

6. Highways ⚖➔113(5)—Voluntary payment by state of claims under highway contractor's bond would not extinguish claims as regards surety.

Voluntary payment by state of claims under highway contractor's bond would not have legal effect of payment or extinguishment of claims, so as to prevent recovery thereon against surety.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Suit by the American Surety Company of New York against the James A. Dick Company and others. From an adverse decree, plaintiff appeals. Affirmed.

Francis C. Wilson, of Santa Fé, N. M., for appellant.

Carl H. Gilbert and C. J. Roberts, both of Santa Fé, N. M. (J. O. Seth, of Santa Fé, N. M., Summers Burkhart, of Albuquerque, N. M., W. B. Walton, of Silver City, N. M.; C. W. Croom, of El Paso, Tex., Wilson & Woodbury, of Silver City, N. M., and Goggin, Hunter & Brown, of El Paso, Tex., on the brief), for appellees.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

POLLOCK, District Judge. Appellant, as plaintiff below, herein referred to as "plaintiff," became surety for a contractor named Charles A. Cunningham, who had en-

tered into a contract with the state highway commission of the state of New Mexico to furnish the materials and perform the labor of constructing New Mexico federal aid project No. 84, in Grant county, that state. The bond given by the contractor was in amount $68,600. The contractor having defaulted in the performance of his contract, the highway commission took over the work and completed the contract. This left a very large number of claimants against the surety on the bond of the contractor, and many actions were instituted on the bond in many courts of law, in which there was no jurisdiction or power to apportion the liability of the surety on its bond in the event the amount of claims against the surety should exceed the penalty of the bond. The plaintiff, surety on the bond, instituted this suit to have an ascertainment of the amount for which it was liable in the aggregate on the bond of the contractor, to restrain claimants from instituting actions in other courts, and to apportion equitably and ratably the penal sum of the bond among all claimants with provable demands in proportion to their proven claims, and thus prevent a great multiplicity of suits and actions that would tend only to a dissipation of the fund in the payment of the costs and expenses of such litigation that otherwise must ensue. To this suit all claimants were made parties or intervened therein.

As the claimants were each and all citizens of the state of New Mexico and the plaintiff a citizen of the state of New York, the suit was, on the ground of diverse citizenship, instituted in the federal court. No objection to the form or purpose of the suit was raised by any claimant, if, indeed, any would have been held tenable. See American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717, and cases cited therein. A special master was appointed by the court, who took the proofs and made a report allowing claims in a large amount. The claim of the state against the surety company was composed and paid in amount $26,743.52. After the allowance of many claims for labor, materials, supplies, etc., to the contractor had been established and allowed by the special master, as shown by his report, and exceptions to the allowance of such claims had been filed by the plaintiff before the master and in the court, the highway commission of the state paid to such claimants in amount the aggregate sum of $19,014.19. Thereafter the plaintiff moved to dismiss said claims, but the motion was denied, and a decree was entered against the plaintiff on said claims in

favor of the original claimants filing the same.

There are many assignments of error taken by plaintiff below, appellant here, but the same may be comprised under three general heads: (1) That the bond on which the plaintiff became surety ran to and protected alone the state of New Mexico and not other claimants; (2) if, on the contrary, it be held claimants to whom the contractor was indebted could proceed against the surety on the bond, in that event the terms and conditions of the bond did not protect many of the claimants, who furnished to the contractor such articles as hay, grain, and feed for horses used on the work, provisions, board, and food furnished for the men employed by the contractor on the work, and lumber used in the building of camps, storerooms, etc., in carrying forward the work; (3) as the highway commission from moneys of the state had voluntarily paid and discharged the claims, the same could not thereafter be decreed as against the surety on the bond. Of these in their order.

[1] As seen from the copy of the conditions of the bond, to wit:

"Now, therefore, the conditions of the foregoing obligations are such that if the said principals shall well and truly perform all obligations under said contract, a copy of which is hereto attached and made a part of this obligation, and shall indemnify and save harmless the said state of New Mexico against any damage or loss for which said state may become liable by the default of said principals, or by reason of any negligence or carelessness on the part of said principals, their agents, servants, or employés, or on account of any act of omission of said principals, their agents or servants, in the performance of this contract, then these presents shall become void; otherwise, they shall remain in full force and effect."

First, an obligation of faithful performance of the contract by the contractor; second, an indemnity bond to hold the state harmless from any act of negligence of the contractor or any liability incurred by the contractor in the doing of the work. While in terms the obligations of the bond run to the state, yet it is quite clear and well settled such obligations as are undertaken by the surety in this case are for the benefit of those who would have claims against the state, or the work done, when completed by the state itself. This is the law of the state of New Mexico, where this undertaking was made and became operative, as declared in

Southwestern Portland Cement Co. v. Williams (N. M.) 251 P. 380, 49 A. L. R. 525; Federal Surety Co. v. Minneapolis Steel & Machinery Co. (C. C. A.) 17 F.(2d) 242; Southwestern Portland Cement Co. v. McElrath Construction Co. (D. C.) 11 F.(2d) 910; First National Bank of Hot Springs, N. M., v. Caples (C. C. A.) 17 F.(2d) 87; Merchants' National Bank v. Otero, 24 N. M. 598, 175 P. 781; Conway v. Carter, 11 N. M. 419, 68 P. 941; Eagle M. & I. Co. v. Lund, 14 N. M. 417, 94 P. 949. Not only so, but any such construction as is claimed by plaintiff would be foreign and antagonistic to the averments of its bill, for the theory of plaintiff's case, on which is invoked the jurisdiction of the court, was that the many claimants against the contractor might and would proceed in many courts and cases to enforce the liability of the plaintiff as surety on the bond. In the amended bill, on which the suit was tried, as stated by plaintiff in its brief, page 4, it is said:

"In order to determine the different amounts of money due for materials and labor and to have the money of the retained percentage in the hands of the state highway engineer declared a trust fund subject to claims for materials and labor, the appellant filed a bill in equity against the appellees, requiring them to intervene upon their respective claims, and against the state highway engineer, for an accounting of the funds he was retaining under the contract. It was alleged in the second amended bill that the total amount of the claims of the appellees and the state was in excess of the penalty of the bond, and that it would be necessary to prorate the penalty of the bond among all the claimants."

[2] Having invoked the jurisdiction of the court on the theory the plaintiff was liable, not alone to the state on its obligations, but to the individual and corporate claimants having demands against the contractor, and the case having proceeded to trial and decree on this theory, it would be inequitable and unjust to now permit plaintiff to contradict the solemn averments and admissions made in its pleading. In Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 114 F. 133, this court, speaking through Judge Sanborn, said:

"One may not try a case upon one theory, and then reverse the judgment against him in the appellate court upon another and inconsistent theory, which was not presented, urged, or tried in the court below. Insurance Co. v. Frederick, 58 F. 144, 149, 7 C. C. A. 122, 127, 128, 19 U. S. App. 24, 34;

Walker v. Collins, 59 F. 70, 72, 8 C. C. A. 1, 3, 4, 19 U. S. App. 307, 311, 312; Speer v. Board, 32 C. C. A. 101, 88 F. 749, 753; Burbank v. Bigelow, 154 U. S. 558, 14 S. Ct. 1163, 19 L. Ed. 51; Railroad Co. v. Estill, 147 U. S. 591, 13 S. Ct. 444, 37 L. Ed. 292; Horne v. George H. Hammond Co., 18 C. C. A. 54, 71 F. 314."

We are therefore of the opinion, not only that the obligation in this case, while running to the state, was made for the benefit of those furnishing labor, materials, etc., to the contractor, and may be enforced by such claimants, but, further, that the case was brought and tried in the court below by the plaintiff on this theory, and it should not be allowed in this court to depart therefrom. [3, 4] The next error of which complaint is made is the finding of the master, affirmed by the court, that certain claims presented and allowed were in their nature not covered by the obligations of the bond. But, as has been seen, the conditions of the bond are very broad and general in their terms, and are inclusive of almost any service performed or labor employed in the progress of the work, and no matter whether the bond in this case is broader than that required by the statute law of New Mexico to be taken, or the contrary, the obligation of the bond given in this case is determined by its language and the surety is liable according to its terms. Equitable Surety Co. v. McMillan, 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394. Taking the broad general terms in which the conditions of the obligation are couched, we are of the opinion the claims as presented and allowed by the special master are of such nature as were rightly allowable against the surety on the contractor's bond.

[5] However, the record discloses a tentative or proposed report of the master was handed solicitors for the respective parties in the first week in July, 1925. To this proposed report of the master objections were filed by plaintiff, which objections were overruled by the special master. Thereafter the final report of the master, as completed by him, was filed in the court and this case on the 15th day of September, 1925. While it is true the objections of plaintiff to the proposed report of the master which were lodged with him as special master, were by him transmitted to the clerk of the court, the record discloses no exceptions whatever were filed to the final report as completed and filed by the master within 20 days after the date of its filing, or, indeed, at any time thereafter. In Decker v. Smith (D. C.) 225 F. 776, a similar condition existed as in this in-

stant case. In the opinion in that case it is said:

" 'The master, as soon as his report is ready, shall return the same into the clerk's office and the day of the return shall be entered by the clerk in the equity docket. The parties shall have 20 days from the time of the filing of the report to file exceptions thereto, and if no exceptions are within that period filed by either party, the report shall stand confirmed. If exceptions are filed, they shall stand for hearing before the court, if then in session, or, if not, at the next sitting held thereafter, by adjournment or otherwise.' The reason of the rule is apparent. It prevents delay, gives a reasonable time, and informs the opposing party of the objections to the report. The exceptions raise the issue. The object of filing objections with the master to his draft or proposed report is to give him an opportunity to correct his report, reconsider any point objected to, and decide differently if he on reconsideration deems himself in error. But these exceptions to the proposed or draft report are not a substitute for the exceptions required to be filed to the report as finally made and do not take their place. If additional time in which to file exceptions to the report of the master is desired, application to the court for such extension should be made. Here this was not done and has not been done. The exceptions of complainant to the report of the master were filed too late and cannot be considered. There may be error in the report, in that the master did not heed the exceptions filed to the proposed or draft report; but, if exceptions are not filed in time to the report as made and filed by the master, such errors, if any, are deemed waived. The master has reported net profits at $2,826.26, with interest from the date of such report, October 23, 1914."

We are of the opinion the reason here given for the existence of equity rule 66 and its true meaning are correctly stated, and that the objections to the proposed report filed in this case were simply an endeavor to induce the special master to change or modify his report before filing it, but that the same did not serve to join any issue on the completed final report, as filed by the special master in court. As no exceptions were filed as provided by equity rule 66, under the rule the report would be confirmed as of course. [6] Coming now to the question of allowing claims of certain parties in the accounting in the final decree after the same had been paid by the state to the claimants, the plaintiff contends the payment by the state, or rather,

by the highway commission out of the moneys of the state, were purely voluntary, and operated to extinguish the debts of these claimants, without any right of subrogation remaining to the payor to enforce payment against the surety on the bond of the contractor. On the contrary, it is the insistence of defendants there was no power, right, or authority on the part of the state highway commission, or any other, under the law and the peculiar circumstances of this case, to employ the moneys or funds of the state in payment of these claims. In consequence, the debts enforceable against the plaintiff as surety on the bond of the contractor, as heretofore held, did not have the effect of payment or extinguishment of the debts; hence the legal effect of the transaction is the claimants have certain funds of the state in their possession unlawfully received by them which, on demand, must be returned into the treasury of the state. We are clearly of the opinion this contention is right. However, for reasons above stated, we are further of the opinion there was no such issue joined on the report of the special master by exceptions properly taken thereto as will enable us to correct such determination by the trial court in approving the report of the special master, although the same might be erroneous, if the report could be examined.

Affirmed.